# THE WEST BOUNDARY REAL ESTATE COMPANY *vs.* WM. H. BAYLESS AND BEVERLY W. SMITH.

*Specific Performance—Contract to Erect House of Given Cost—Compensation in Lieu of Specific Performance—When Deed not Controlled by Antecedent Contract of Sale.*

When a bill is filed for specific performance, it is only under special circumstances that pecuniary compensation will be decreed in lieu of the relief asked for.

When a deed is executed and accepted in pursuance of a contract to sell land, the presumption is that it is a performance of the entire contract, and that the original agreement becomes null.

The general rule is that parol evidence of antecedent negotiations is not admissible to affect the terms of a deed, except where it is impeached for fraud, accident or mistake, or where the deed is shown to have been only a part execution of the contract.

A contract for the sale of land provided that the vendee should erect, within one year, a dwelling house costing not less than $4,000, and made provision for other restrictions. The deed, as executed, did not contain this stipulation, but provided that the grantee should not, within ten years from the date of the deed, erect on said lot any dwelling house costing less than $3,000; and the deed differed in other particulars from the contract of sale. Four months before the expiration of the year referred to in the original agreement, the grantee conveyed the property by an absolute deed to S. Upon a bill for specific performance of the contract and other relief, *Held*, that, assuming the existence of a completed contract, yet, since the deed was inconsistent in important particulars with the contract, it took the place of all antecedent negotiations, and that the plaintiff was not entitled to demand specific performance of the original contract.

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.), sustaining a demurrer to the bill of complaint and dismissing the same without prejudice to the right of the plaintiff to proceed at law.

After negotiations between the plaintiff corporation and the defendant, Bayless, for the sale by the former of the lot

of ground referred to in this case, Mr. F. K. Carey, the president of the plaintiff, on June 16, 1893, wrote to Bayless as follows:

" I am instructed by the board of directors to accept your proposition for the sale of the lot on the west side of Thirteenth street, Walbrook (here follows the description.) The company does not undertake to open the street in the rear of the lot, and does not even designate it, but it may open a street corresponding to it, and in that event requires that no building shall be erected within thirty feet of your *westermost* building line. In other respects the lot is sold to you upon the ordinary terms and under the ordinary restrictions, which are contained in the printed deed, of which I enclose you a copy. You are to pay for the property as follows: Twelve hundred dollars in cash. You are to deliver up to the company eighty shares of its capital stock. You agree to erect a dwelling upon the lot costing not less than $5,000.00, and have it ready for occupancy within one year from 1st July, 1893."

On the next day Bayless replied: "Your letter of 16th inst. received and contents noted. I accept your proposition as to sale of lot, except that the dwelling is to cost not less than $4,000.00 instead of $5,000.00."

On July 3, 1893, the plaintiff executed a deed to Bayless, which, after reciting the payment of $5,200, the entire purchase money, and after the grant in fee simple and the *habendum* clause, contained the following provisions:

The mention of streets or alleys are for the purpose of description, and not for the purpose of dedication. Provided, and on the condition, that the said William H. Bayless, his heirs and assigns, shall not, within the period of ten years from the date hereof, do or permit to be done on the lot hereby conveyed, any of the following acts: 1st. Sell or permit to be sold any alcoholic liquor, etc. 2nd. Build any improvements nearer than thirty feet to the front building lines. 3d. Erect any independent privy or stable. 4th. Erect on said lot any dwelling house costing less than $3,000.00. 5th. Erect any factory or store.

The grantor company covenants: 1st. To indemnify William H. Bayless from costs or damages for condemnation or opening of streets in Walbrook. 2d. To warrant specially. 3d. To execute further assurances.

On February 19, 1894, Bayless conveyed the lot to the defendant, Smith, by a deed in the usual form, containing no covenants except those of special warranty and further assurance. No dwelling house had been erected on the lot.

On July 12, 1894, the plaintiff filed its bill against Bayless and Smith, alleging that, in pursuance of the contract set forth in the above mentioned letters, the deed to Bayless was executed; that Bayless paid $1,200 and delivered the shares of stock, but did not build the house; that Bayless sold the land to Smith for the purpose of escaping his obligation to build, but that Smith took the lot with actual notice thereof; that on account of said contract plaintiff sold to Bayless for $1,270 less than the market value of the lot; and that plaintiff was injured by defendant's breach of contract. The bill prayed:

(1.) That the said deed from the said William H. Bayless to the said Beverly W. Smith may be annulled and set aside by the decree of this Honorable Court. (2.) That the said Beverly W. Smith and William H. Bayless, their heirs and assigns, may be restrained by the order and injunction of this Honorable Court from selling or in any way disposing of the said lot of ground. (3.) That the said agreement between the said William H. Bayless and your orator may be specifically enforced, and that the said William H. Bayless may be decreed to build upon the said lot, in accordance therewith, a house costing not less than $4,000. (4.) That the said William H. Bayless may be decreed to pay to your orator the sum of $1,270.00, being the difference between the price paid by him and the market value of the said lot on June 16th, 1893, as liquidated damages for the non-performance by him of his agreement to build a house upon the said lot, and to have it ready for occupancy by July 1st, 1894.

The defendants demurred to the bill, and the plaintiff, declining to amend, appealed from the decree dismissing the bill.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*William H. Buckler* for the appellant.

A contract to erect a definite structure of any kind on land sold to the person who agrees to erect it, where the conveyance of the land is the consideration for the agreement, and where the structure is contributory to the value of adjoining land belonging to the plaintiff, is one which equity will specifically enforce.

This building agreement is one which equity will specifically enforce. The principle on which Courts of Equity have refused to specifically enforce building contracts of the usual kind (*i. e.*, those between a builder and the owner of the land), was established by Lord Kenyon in *Errington* v. *Aynesly* (2 Brown Ch. 341), and by Lord Thurlow in *Lucas* v. *Commerford* (3 Brown Ch. 166.) The reason given was that "if one will not build, another may," and that a Court of Equity would not undertake to superintend the construction of a building. In *Fleet* v. *Brandon* (8 Ves. Jr., 159), where the contract was to fill up a gravel pit, the same rule was applied, on the ground that the plaintiff, who was owner of the land, had an adequate remedy at law. The rule was recognized by Mellish, L. J., in *Wilkinson* v. *Clements* (L. R. 8 Ch. App. 112), and is well-established in this country. *Story, E. J.*, sections 725, 726; *Beck* v. *Allison*, 56 N. Y. 368; *Mastin* v. *Halley*, 61 Mo. 201; *Pomeroy Eq.*, section 1402.

But the rule is subject to the following important exceptions: (1.) Where the defendant has agreed to construct on his own land some definite structure, in which the plaintiff has an interest not susceptible of adequate compensation in damages. (2.) Where the consideration for the

promised construction is the conveyance of the land on which the structure is to be erected.    (3.) Where the structure is essential to the use, or contributory to the value of adjoining land owned by the plaintiff.    (4.) Where there has been a part performance, so that the defendant is enjoying the benefits of the contract *in specie.*

In these four classes of cases, equity *will* enforce a building contract, and in the case at bar, every one of these four exceptions is distinctly present.    See *Pomeroy Eq. Jur.*, 2d edn., p. 2159, note; *Pomeroy on Specific Performance*, section 23; *Fry on Specific Performance*, 3d edn., sec. 103; *Mr. Justice Miller, in Ross* v. *U. P. Ry. Co.* (1 Woolworth, 26–41.)    A review of the reported cases will show how far the Courts have carried the above rules, even when, as Mr. Fry says (page 46), "the terms of the contract have been general and difficult to execute."

In England the earliest case (1843), is that of *Storer* v. *G. W. Railway* (2 Y. & C. 48.)    The plaintiff had sold to the company a right of way through his pleasure grounds, and the company had agreed to construct *an arched way* under its roadbed large enough for hay-wagons to pass. The Vice-Chancellor said it was competent for the Court to enforce the specific performance of an agreement by the defendant to do defined work on his own property.    See also *Price* v. *Corporation of Penzance*, 4 Hare, 506; *Raphael* v. *Thames Valley Ry. Co.*, L. R. 2 Ch. App. 147; *Wilson* v. *Furness Ry. Co.*, L. R. 9 Eq. 28; *Greene* v. *West Cheshire Ry. Co.*, L. R. 13 Eq. 44; *McManus* v. *Cooke*, 35 Ch. D. 697; *Hepburn's case*, 50 L. T. 660.    The three cases of *S. W. Ry.* v. *Wythes*, 5 D. M. & G. 880; *Wilson* v. *N. & B. Junction Ry.*, L. R. 9 Ch. App. 279, and *Brace* v. *Wahnert*, 25 Beav, 348, are in apparent conflict with the above line of decisions, but may easily be reconciled.

The same rule has been applied in the United States.    In *Stuyvesant* v. *N. Y. City*, 11 Paige, 414, where the city had agreed to *plant* and *regulate* Stuyvesant Square, the decree was granted by Chancellor Walworth, who said: "The Cour

has jurisdiction to compel the specific performance by the defendant of a covenant to make certain improvements or erection upon his own land, for the benefit of the complainant." In *Burchett* v. *Bolling*, 5 Munford, 442, where partners had agreed to build *a tavern* on the land of the plaintiff conveyed by 'him for that purpose, specific performance was also decreed. In *Ross* v. *U. P. R. R. Co.*, 1 Woolworth, 26, the late Mr. Justice Miller gave an admirable review of the authorities, and though he refused specific performance, because of the gigantic character of the undertaking, he carefully laid down the distinctions above stated, and recognized the English rule.

In *Lawrence* v. *Saratoga R. Co.* (36 Hun. 467), the railway company had promised to construct for the plaintiff as a partial consideration, (1.) "*A bridge over the railroad.*" (2.) "*A neat and good bridge* at west end of field." (3.) "*A neat and tasteful station* at or near Excelsior Spring." Despite the indefinite nature of these stipulations, which was strongly urged on behalf of the defendants, the New York Supreme Court, in an elaborate opinion, decided to decree specific performance of the entire contract. Again, in the recent case of *Post* v. *West Shore R. R.* (50 Hun. 301, unanimously affirmed by the Court of Appeals in 123 N. Y. 581), where the covenant in its deed required the building by the railway company of "*a good and convenient crossing*," a decree for specific performance was declared to be proper. See also *Gregory* v. *Ingwersen*, 32 N. J. Eq. 199; *Hubbard* v. *R. R. Co.*, 63 Mo. 68; *Dayton R. R. Co.* v. *Newton*, 20 Ohio St. 401.

The cases in which specific performance has been refused are distinguishable and do not militate against the soundness of the rule; *e. g. Dauforth* v. *R. R. Co.*, 30 N. J. Eq. 15; *Blanchard* v. *R. R. Co.*, 31 Mich. 43; *Port Clinton Co.* v. *R. R. Co.*, 13 Ohio, 544; *Ross* v. *U. P. R. Co.*, 1 Woolw. 36; *Marble Co.* v. *Ripley*, 10 Wall. 358; *Kendall* v. *Frey*, 74 Wis. 29; *Mastin* v. *Halley*, 61 Mo. 201.

The *ratio decidendi* of the cases above cited, is that spe-

cific performance is the proper remedy where the plaintiff has parted with the land in consideration of the promised structure, and where the promise, in virtue of which the defendant obtained possession, has been flagrantly broken. These reasons exist here as strongly as in any of the above cases. Is the arm of Equity too short to reach a defendant who wilfully refuses to perform such a contract as the one now before the Court, or too feeble to coerce him?

The contract containing this building agreement is a valid contract. The correspondence between Mr. Bayless and Mr. Carey, set forth in the bill of complaint, when taken together with the assent of Mr. Carey to the modification in the price of the house proposed by Mr. Bayless, constitutes a complete contract. The essence of contract is mutual assent, however expressed. 1 *Addison on Contracts,* Abbott & Wood's notes, 8th ed. p. 15, note.

The contract embodied in the letters of June 16 and 17, 1893, was not merged in the subsequent deed of July 3, 1893. Merger is a question of intention. *Bryant* v. *Hunting,* 71 Md. 443; *Liuthicum* v. *Thomas,* 59 Md. 594; *Newbold* v. *Peabody H. Co.,* 70 Md. 493. The deed is plainly not coextensive with the contract, and therefore cannot have merged it. *Boaler* v. *Mayor,* 19 C. B. (N. S.) 76; *Kempsey* v. *Metcalf,* 61 Iowa, 320; *Witbeck* v. *Waine,* 16 N. Y. 532.

Specific performance should be granted, as being the only proper and adequate remedy. All the details requisite in making out a *prima facie* case for specific performance, are here presented. The case is fully and accurately stated in the bill. *Semmes* v. *Worthington* (38 Md. 318.) The contract is mutual, fair, certain and reasonable; it has been performed on the part of the plaintiff, and performance is alleged in the bill. *Rider* v. *Gray* (10 Md. 285.) *Carswell* v. *Walsh* (70 Md. 507.) In a case of this kind, damages in an action at law offer an uncertain remedy, and it is settled that where damages would be inadequate or their measure uncertain, specific performance is the proper remedy.

*Gottschalk* v. *Stein*, 69 Md. 56 ; *Johnson* v. *Johnson*, 40 Md. 198 ; *Pratt* v. *Law*, 9 Cranch. 493.

The deed of February 19th, 1894, from Bayless to Smith, should be rescinded. Though this building agreement might well be specifically enforced against Mr. Smith, being a purchaser with notice (see *Aikin* v. *R. R. Co.*, 26 Barb. 289, 300), yet the appellant, as already shown, has a right to its enforcement against Mr. Bayless, the original party to the contract. For this purpose the deed of February 19th, 1894, must be rescinded, and this should be done as incidental to the relief of specific performance.

The main reason for rescission is that Smith, by purchasing with full notice of the appellant's equity, was guilty of constructive fraud. This species of fraud is thus defined by *Story*, (Eq. Jur. I, section 395): "Another class of constructive frauds consists of where a person purchases with full notice of the legal or equitable title of other persons to the same property." See also section 397, for Lord Hardwicke's doctrine as to *mala fide* purchasers. Again, the appellant was a creditor of Bayless to the extent of this building agreement, and Smith knew it. *Story* (Eq. Jur. I, section 369), says: " Cases have repeatedly been decided in which persons have given a full and fair price for goods, and where the possession has actually been changed; yet, being done for the purpose of defeating creditors, the transaction has been held fraudulent, and, therefore, set aside." This has repeatedly been recognized in Maryland. *Stewart* v. *Inglehart*, 7 G. & J. 135 ; *Price* v. *McDonald*, 1 Md. 414 ; *Winchester* v. *R. R. Co.*, 4 Md. 239 ; *Newbold* v. *Peabody H. Co.*, 70 Md. 493.

Damages for the non-performance of the building agreement should be granted either in addition to, or in substantiation for, specific performance. In this State, the granting of compensation *in lieu of* specific performance, where the specific execution of the agreement cannot, for some reason, be decreed, is well established. *Rider* v. *Gray* (10 Md. 185); *Nelson* v. *Bank* (27 Md. 76); *Green* v. *Drummond* (31 Md. 71.)

Compensation *in addition to* specific performance has been granted in cases similar to the case at bar. For instance, in *Corpn. of London* v. *Southgate* (38 L. J. Ch. 141), a contract to accept a lease was specifically enforced, and damages were decreed to be paid by the lessee for the *non-building of the house* within the time stipulated. *In Post* v. *R. R. Co.*, 50 (Hun. 301), already cited here in support of the first point, not only was the contract to build the crossing enforced, but the Court said (page 305): "It is the practice of Courts of Equity to administer all the relief which the nature of the case demands," and decreed that the railroad company should pay twenty-five hundred dollars damages for its non-performance. See also *Story Eq. Jur.*, secs. 796, 799 ; *Pomeroy Spec. Perf.*, sec. 474 ; 5 *Wait's Ac. & Def.*, 831.

Even if specific performance be refused, the deed of July 3rd, 1893, should be rescinded on the ground that the consideration upon which it was given has failed. It is a well-established rule of equity that a deed will be rescinded on the application of the defrauded grantor, where the consideration for the deed has failed, as it has in this instance. *Linthicum* v. *Thomas*, 59 Md. 574 ; *Clagett* v. *Hall*, 9 G. & J. 96 ; *Benscotter* v. *Green*, 60 Md. 333 ; *Holland* v. *Anderson*, 38 Mo. 55.

*\*Edwin G. Baetjer*, for the appellees.

Fowler, J., delivered the opinion of the Court.

We announced at the conclusion of the opening argument of the appellant's counsel in this case that it was our opinion that the order sustaining the demurrer to the plaintiff's bill should be affirmed, and some of the grounds on which that opinion was based were then briefly expressed by the Chief Justice. Counsel for appellant at once filed a motion for reargument, which is based upon the case of

---

*The Court declined to hear counsel for the appellees.

*Busey* v. *McCurley*, 61 Md. 436, which was not cited either in the briefs or oral argument, and he contends that by the decision in the case cited it has been in effect adjudicated:

"*First.*—That a contract to erect a dwelling of a given cost is sufficiently definite to support a bill for specific performance.

. "*Second.*—That if the defendant had parted with the title to the land upon which the dwelling is to be erected, the Court will grant compensation to the plaintiff in lieu of specific performance."

A careful examination of that case will show, however, that it does not support the contention of the appellant. The contract sought to be specifically enforced in the case now before us, is to erect on a certain lot a dwelling house costing not less than four thousand dollars. In the case relied on, the bill was filed to enforce a stipulation in an ante-nuptial contract, by which James McCurley, the testator of the appellants in that case, agreed that his wife, if she should survive him, should receive, at his death, from his estate, "one dwelling house, to be vested in her absolutely, in lieu of dower," and in consideration therefor she resigned her dower and distributive share in his estate. It appears that the husband left an estate valued at about one hundred thousand dollars, and by his will he disposed of the whole of it, and bequeathed a small leasehold dwelling house, worth two thousand dollars, to his wife, in discharge of his agreement with her. She renounced this bequest and claimed a certain dwelling on West Baltimore street, which she alleged was built for her and was designed to come to her in the event of her surviving her husband. This dwelling house, however, had been devised to one of the testator's daughters by a former wife. The case stated in the bill, therefore, was simply this: That the husband had agreed to make provision for a dwelling house for his wife by will; that he had built and designed a particular house on Baltimore street, in Baltimore City, for her, and that he had not only failed to devise to her the house designated,

but that the bequest he made to her was simply illusory, and was made with a studied design of depriving her of what was really intended originally she should have. It was shown by the proof that the husband did in fact select the particular house mentioned in the bill, as the one intended for his wife, and that it was worth about $6,000. Under these circumstances the Court said, "there certainly ought to be a remedy for the grievance suffered by the widow, if the case stated in the bill be clearly made out." And notwithstanding the fact that the dwelling house she was to have had been *clearly designated, as shown by the proof*, it was held that specific performance of the contract would be attended with no little difficulty, *and that as there had been no special objection taken to the jurisdiction of the Court to grant relief by way of compensation*, that was perhaps the most just and equitable mode of administering relief *under the peculiar circumstances of the case.*

The English cases cited in *Busey, Ex.*, v. *McCurley, supra*, cannot, we think, be fairly relied on to support the contention of the appellant in this case. They and many others do fully support the general proposition announced in 61 Md. : "That a Court of Equity has jurisdiction, upon application for specific performance, to decree the assignment of a particular house, or the erection or purchase of a house, to gratify the requirements of the contract sought to be specifically performed." The Court, however, is careful to limit this general statement of the rule, and proceeded to say : "But in all such cases the agreement must be sufficiently definite to guide the Court in the direction to be given for specific performance, or, at any rate, that it may be made certain and definite upon proper inquiry." And it must be remembered that in the case relied on the Court had the case not only of a house of the value of six thousand dollars, but it had the additional fact that the very house designated by the husband himself was a certain house on Baltimore street, in Baltimore City. What was indefinite and uncertain in the contract was made definite

and certain by proper inquiry, that is to say, by the evidence in the cause. But as the case in hand now stands we have nothing but the general and indefinite language of the contract, nor has it been suggested that there is any proper inquiry we could resort to make that contract so definite and certain that it may be specifically executed by a Court of Equity.

Although in *Busey's case, supra,* relief was granted by way of compensation, because of the peculiar circumstances of that case, and also because no special objection was taken to the jurisdiction of the Court so to do, yet, at the same time, the rule was clearly laid down that the power to grant compensatory relief will not be exercised in all cases for specific performance. " That power, as a general rule, exists only as *ancillary or incidental to the power to grant other relief.*" Under Act of Parliament, 21 and 22 Victoria, chapter 27 (Lord Cairn's Act), section 2, it is provided that " in all cases in which a Court of Chancery in England has jurisdiction   *   *   *   for specific performance, it shall be lawful for the same Court, if it shall think fit, to award damages to the party injured, either in addition to or in substitution for   *   *   *   such specific performance; and such damages shall be assessed in such manner as the Court shall direct." Our rule, however, is, as laid down in *Busey's case,* 61 Md. 448, that in cases of specific performance it is only " under special circumstances, and upon peculiar equities, as for instance in cases of fraud, or where the party has disabled himself by matters *ex post facto* from a specific performance; or where there is no adequate remedy at law that the Court award pecuniary compensation in lieu of other relief."

In deference to the earnest and able argument, oral and written, submitted on the part of the appellant, we have thus considered some of the questions presented other than the one we shall now proceed to discuss briefly, and which, in our opinion, is conclusive of the whole matter. Subsequent to the correspondence between the plaintiff and the

said defendant, Bayless, which constitutes the contract here sought to be enforced, a deed for the lot in question was executed by the former to the latter, and the question is whether the previous parol contract is or is not merged in the subsequent deed.

The general proposition is well settled that parol evidence cannot be " used either at law or in equity for the purpose of contradicting, adding to, subtracting from or varying the terms of a deed, or controlling its legal operation and effect, except where it is impeached for fraud, or where it is sought to be reformed upon the allegation of fraud, accident or mistake." *Bladen* v. *Wells*, 30 Md. 581. It is true there is another exception, as for instance, where it clearly appears that it was the intention that the deed was only a part of the execution of the contract. See *Newbold* v. *Peabody H. Co.*, 70 Md. 499, where it was expressly stipulated in the agreement that the restrictions and reservations contained in the contract should be complied with and carried out *as if embodied in the deed.* In *Bryant* v. *Hunting*, 71 Md. 443, the general doctrine is thus announced: " The *prima facie* presumption of law arising from the acceptance of a deed is that it is an execution of the whole contract, and the rights and remedies of the parties in relation to such contract are to be determined by such deed, and the original agreement becomes null and void." The case of *Linthicum* v. *Thomas*, 59 Md. 574, cited by the appellant, has, we think, no application here. That was an appeal from a decree setting aside a deed and contract for exchange of property on the ground of fraud.

Is the case before us an exception to the general rule, and can the contract and the deed stand together? It appears that on the 16th of June, 1893, the president of the appellant wrote to the defendant, Bayless, that he had been instructed by his company " to accept the proposition of Bayless for the sale of the lot in question." Then followed a stipulation in regard to the opening of a street and the putting of improvements nearer than thirty feet from the

westernmost or rear boundary of the lot ; and the letter continues : " In other respects the lot is sold to you upon the ordinary terms and under ordinary restrictions which are contained in the printed deed, of which I enclose you a copy. You are to pay for the property as follows : $1,200 cash. You are to deliver up to the company 80 shares of its capital stock. You agree to erect a dwelling upon the lot costing not less than $5,000, and have it ready for occupancy within one year from 1 July, 1893." On the next day Mr. Bayless replied as follows : " Your letter of the 16 inst. received and contents noted. I accept your proposition as to sale of lot, except that the dwelling is to cost not less than $4,000 instead of $5,000."

This was the end of the correspondence, and it may be doubted whether there was ever a completed contract formed. But assuming that it was a completed and valid contract, what was the effect upon it of the subsequent deed, which was executed on the 3rd of July, 1893, by the plaintiff to the defendant, Bayless, conveying the same lot described in the contract? The consideration set forth in the deed is $5,200, and it also provided that the grantee, his heirs and assigns, should not, within ten years from the date of said deed, erect on said lot any dwelling house costing less than *three thousand dollars*, and within the same time he should not build any improvements nearer than thirty feet to the front building line. It is impossible, we think, looking at these two instruments, to suppose they were intended to stand together. The consideration in the contract is $1,200 cash and 80 shares of the capital stock of the appellant corporation, while the consideration in the deed is $5,260. The contract provides that no improvements shall, within ten years, be erected nearer than thirty feet to the *rear* building line ; the deed provides that none within the same time shall be erected nearer than thirty feet to the *front* building line ; and, finally, the deed provides that the grantee, &c., shall not, within ten years, erect on said lot a dwelling costing less than $3,000, while the agreement declares that he shall, before the first of July,

1894, erect on said lot a dwelling costing not less than four thousand dollars.   It would seem, therefore, that the contract, as understood and alleged by the appellant, is entirely inconsistent with the deed in several important particulars. We find nothing which clearly shows that the deed was only a part execution of the contract; but, on the contrary, it appears very clear that it was the intention of the parties, so far as we can ascertain that intention from the alleged contract and the deed, that the latter was to take the place of all antecedent negotiations, and it follows that even if a valid contract had been made, it became, after the execution of the deed, void and of no further effect.   As was said by the late JUDGE MILLER, in delivering the opinion of this Court in *Bladen* v. *Wells*, *supra*, " if a party after conveying by deed   *   *   * can set up an antecedent or accompanying parol contract contradicting the deed   *   *   * there would be very little room for the operation of the rule and very little security or safety in such instruments or in titles held under them."

*Decree affirmed.*

(Decided February 28th, 1895.)