## AMERICAN AUTOMOBILE INSURANCE COMPANY
## *v.* HARRY SHAPIRO.

*Reformation of Instruments—Automobile Insurance Policy—*
*Specified Chauffeur Clause.*

Where the agent issuing an automobile policy intended to insert therein a clause limiting the insurance to losses while the car was in use by a specified chauffeur, and the insured intended to procure a policy without such a clause, there was no agreement by the parties to be given expression by a decree for reformation of the policy, either by eliminating such clause, or by changing the chauffeur's name therein.          pp. 386-388

Assuming that the insured intended to be bound by any proper clause contained in the form of policy issued by the insurer, and that therefore the insertion of the specified chauffeur clause was in accord with his intention, he could have such clause reformed by a change in the name therein of the chauffeur, only by proving, in a clear and unequivalent manner, that the agent intended to fill in the name as demanded in his bill, by proof almost, if not quite, incontrovertible, clear and overwhelming.
                                                pp. 389-391

The fact that the insured discovers a mistake in his policy only after a loss, so that it is too late to procure other insurance, and a rescission would therefore give no practical relief, does not enable the court to meet the need by framing and installing a contract which the parties themselves did not enter into.
                                                p. 388

*Decided November 10th, 1926.*

Appeal from the Circuit Court No. 2 of Baltimore City (DUKE BOND, J.).

Bill by Harry Shapiro against the American Automobile Insurance Company. From a decree for plaintiff, defendant appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Walter L. Clark,* with whom were *Walter V. Harrison* and *Charles G. Page* on the brief, for the appellant.

*W. Calvin Chesnut* and *S. Ralph Warnken,* with whom were *James J. Carmody* and *Morris A. Rome* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appeal in this case is from a decree reforming a policy of insurance on automobiles after a loss which was not covered by the terms of the policy, and ordering the loss to be paid by the insurer.

Harry Shapiro owned two cars, a large one and a small one; the latter, recently purchased, was used by him ordinarily for driving, alone, to and from his place of business. His insurance on his larger car being near its expiration, he authorized his father-in-law, David Bernstein, who was an insurance solicitor, to procure insurance on both cars, and Bernstein took the business to a Miss Casey, in the office of J. Ramsay Barry and Company, general brokers. Barry and Company were agents in Baltimore City for the American Automobile Insurance Company, among others, and that company was issuing a single policy to insure against losses from either one of two cars when only one of them was to be in use, or "on the street," at one time; and the agents were urging this form of policy on customers. Bernstein knowing little of insurance, Miss Casey called up Mr. Shapiro and suggested this kind of policy, which would be issued at a rate lower than the rate for policies on the two cars separately, and, according to the testimony of Shapiro, she told him that there was only one restriction, that only one car could be on the street at a time. He told her, he says, that he would take that form of policy, and she answered that it would be issued. Miss Casey's testimony confirms this generally, so far, at least, as to say that it would be in accordance with her practice. She

is no longer in the employ of Barry and Company and has little recollection of this particular piece of business.

The form of policy referred to, however, contained a clause which, in order to secure compliance with the restriction mentioned, limited the insurance to losses while the car in use was being driven by one specified chauffeur or his successor in the employment, or while driven by the insured himself with that chauffeur in the car. The testimony establishes, we think, that this was a regular, inseparable feature of such a policy, on the forms provided by this company to the agents, that in the contract of the company with the agents the latter were prohibited from binding the company on other than the printed forms provided, and that the policy itself contained the same express prohibition and limitation upon the agents' authority. But, according to Mr. Shapiro's testimony, the existence of this clause, or, as it was termed, the "specified chauffeur endorsement," was not explained to him in the preliminary conversation with Miss Casey, and he did not know of it until after his loss. He says that Miss Casey, in negotiating the insurance over the telephone, asked him whether he had a chauffeur, and that he answered that he had, and gave the name of Nelson Johnson, who was employed by him for driving cars and other work. Miss Casey, it appears, wrote in abbreviated form on the regular sheet or blank used in the office for information for policies, "specified chauffeur endorsement," but did not note down any name with it. It was the general practice of the office, as shown by the testimony, to fill in the owner's name when no other was noted down, and, in this instance, the name of the owner, the only name on the sheet, was filled in by the policy writing clerk, and in that form the policy was passed on to the agents duly authorized to sign policies, and was signed, and delivered to Mr. Shapiro. He locked it in his safe, without reading it, and, he says, proceeded upon his understanding that the only restriction upon him, under the policy, was that one car only could be on the street at one time. He did not at all times have either his chauffeur or himself in the car being driven;

he himself still, customarily, drove the smaller car to and from his place of business without the chauffeur, and the chauffeur also drove without Mr. Shapiro.

During the term of the policy, the larger car, while driven by the chauffeur, collided with two pedestrians, and they made a demand upon Mr. Shapiro for payment of damages for injuries sustained. The claim was referred to the insurance company, the appellant, under its policy, and the company denied liability because the accident did not occur while the car was being driven by the driver covered by the policy. The insured then employed attorneys of his own, and under their advice, settled the claim of the pedestrians for three thousand dollars. The insurance company waived any objection to the insured's settling directly. Mr. Shapiro then brought suit at law for this loss and for his expenses in connection with the case; and when it appeared that recovery could not be had at law, in view of the limitation of the insurance to losses caused while he, himself, was driving, he dismissed that suit, and brought the present one for reformation of the policy and reimbursement of his loss under a decree of the court of equity. The decree directed that the  policy be reformed by substitution of the name of the chauffeur, Nelson Johnson, in place of the insured's own name, as the specified driver, and, that the company pay to the insured the sum of $3,915.

In the opinion of this Court, the relief of reformation could not be granted consistently with the contentions of the insured, because if these were well founded there would be no contract of the parties to be restored by reformation of the written policy.

This is not a case in which there was any previous, binding, verbal contract of insurance apart from the policy; the negotiations between Mr. Shapiro and Miss Casey were concerned solely with the form and contents of a policy which, alone, was to be the contract. The theory urged by the complainant, Mr. Shapiro, is that that contract, as actually written, fails, by mistake, to contain what the parties both intended it should contain, and the reformation is to make

the policy fulfill its office of expressing the agreement which the parties both intended to make. It is, of course, the very opposite of the purpose of reformation to install an agreement which the parties did not actually make. "Where the proof is of such a character as to leave no doubt whatever in the mind of the court that mistake has intervened, and the instrument sought to be rectified is variant from the actual contract of the parties, there can be no doubt, at this day, of the competency of a court of equity so to amend the instrument as to make it conform to the real intention of the parties. But in such cases it is not enough to show the intention of one of the parties to the instrument only; the proof must establish, incontrovertibly, that the error or mistake alleged was common to both parties. In other words, it must be conclusively established that both parties understood the contract as it is alleged it ought to have been expressed, and as in fact it was, but for the mistake alleged in reducing it to writing." *Stiles v. Willis,* 66 Md. 552, 555. But here, the insured, in his bill of complaint and in argument on his behalf, contends that he did not agree to the insertion of any specified chauffeur clause, and it is clear that Miss Casey, who discussed the insurance with him and her employers, had no idea of issuing a policy without it. The evidence shows that the clause was an inseparable part of the form of policy furnished and prescribed by this insurance company, and that the agents had no power to issue the policy without it. *Northern Assurance Co. v. Grand View Bldg. Assoc.,* 183 U. S. 308; *Crescent Ring Company v. Travelers Indemnity Co.,* (N. J. 1926), 132 Atl. Rep. 106. This is the testimony of the agents; and Miss Casey testified, on behalf of the insured, that she had no idea of issuing it without the clause, and no power to do so. And her asking Mr. Shapiro as to the driver makes it evident that the name of a particular driver was intended, by her, at least, to have a place in the policy. If her explanation of the policy led Mr. Shapiro to suppose there was no such limitation as to driver in the policy, it appears to have been done innocently. No fraud is alleged, or proved. *Show-*

*man v. Miller,* 6 Md. 479, 485. Her reference to the restriction to one car on the street at a time, seems, indeed, to have been intended by her rather as a general explanation of a liability for one car at a time, under the single policy, notwithstanding two cars were to be insured. It follows, therefore, that, accepting the contention of the plaintiff, one of the parties, himself, intended a policy without any specified chauffeur clause, and the other intended that the policy should have such a clause, and in this situation an agreement to be given expression by reformation of the policy would appear to be lacking.

In argument, the insured contends for either one of two reliefs. He contends for a right to a contract of insurance without any specified chauffeur clause, and, in the alternative, a right to a contract with the specified chauffeur clause but with the name of Nelson Johnson substituted for his own in that clause. Reformation, by eliminating the specified chauffeur clause entirely, was not that prayed in the bill of complaint, and not that granted in the decree. And, if it had been prayed and granted, the decree must have been reversed, because, as has been stated, there was no mutual intention that a policy in that form should be issued. And, if Mr. Shapiro is to be taken as not having agreed to a limitation of the insurance to cars with any specified chauffeur, then, again, there would be no agreement on specifying Nelson Johnson's name, and the agreement to be given expression by reformation would still be lacking. The insured might, perhaps be entitled to rescind, but there would be no ground for the relief of reformation sought in this proceeding. *Dulany v. Rogers,* 50 Md. 524. The fact that when the mistake is discovered, only after a loss, it is too late to obtain other insurance, and rescission, therefore, gives no practical relief, does not enable the court to meet the need by framing and installing a contract which the parties themselves did not enter into. The only full, practical, remedy, when there has been no meeting of the minds, must be found in precautions taken by the insured, before a loss, to see that his policy does

conform to his requirements.  *Metzger v. Aetna Ins. Co.,* 227
N. Y. 411, 415.

On the theories of the case argued by the parties, and so
far discussed, then, it has appeared to this Court that the
trial court could not properly grant the relief which it has
decreed.  It may be, however, that in coming to this result
too much consequence is attached to a mere present attitude
of the appellee toward a past situation, to what is merely
a present theory or interpretation of that situation; and we
have deemed it proper to consider whether there is sufficient
proof of facts to support another theory of the legal conse-
quences, which notwithstanding it differs from the theory
urged by the insured in contending for the relief, may give
the correct analysis of the situation.  It may be contended
that the appellee's testimony is meant to go only to the point
of saying that he did not know or expect the endorsement
in his policy.  And consistently with this, he might take
the position that while he did not expect and did not know
of this clause, he did expect to be bound by any proper clause
which the company might have in the form of policy it issued,
and that he recognizes that he was bound by the specified
chauffeur clause here.  This would seem a likely analysis
of the situation, and it would be a condition commonly met
with, for policy-holders commonly take their policies under-
standing and accepting whatever clauses they may contain,
although they have not discussed the clauses with the insur-
ance agents, and have not read their policies.  There might
still be, in that situation, a contract in all respects enforce-
able.  "Ordinarily, it is not expected that an application for
insurance will contain all of the terms and conditions which
are included in the policy when it is issued.  Certain particu-
lars are named, others are not.  The application is for such
insurance on such terms and conditions as, in view of the
particulars submitted, the company sells. * * * Possibly, if
the policy contains any extraordinary provisions such as are
not generally or often found in policies, the insured on receiv-
ing it might have a right to rescind." *Commonwealth etc.*

*Ins. Co. v. Knabe Co.,* 171 Mass. 265, 270. If, in such a case, the insured, finding a mistake to have been made by the insurance agent in filling in a name, should accept the clause, but demand that it be made to conform to the information furnished and which the agent intended to insert, a stronger claim of right to the relief might be presented. And we have considered the testimony to support that theory of the case.

On that theory, the fact of greatest importance would be the intention of the insurance agent to fill in the name as now demanded. And it must be proved in a clear unequivocal manner by proof, almost, if not quite, incontrovertible, clear and overwhelming. *Nat. Fire Ins. Co. v. Crane,* 16 Md. 260.

When the testimony is examined closely, it seems to us hardly to meet these exacting requirements. The fact remains doubtful. Mr. Shapiro, on the one hand, testifies positively that he gave the name of Nelson Johnson to Miss Casey, in response to her inquiry. The company and its agents who signed and issued the policy know nothing of this, other than that Mr. Shapiro's name was inserted as the driver to be covered, that the sheet containing information obtained from the insured for writing the policy contains no name other than that of Mr. Shapiro, and that the absence of a name opposite the note of the specified chauffeur endorsement ordinarily signifies that the name of the insured was to be inserted, as it was. They know, also, that the insured did in fact regularly drive at least one of his cars, and that was the car recently purchased, which chiefly made it necessary to obtain new insurance; so that it would have been consistent with the facts also that Mr. Shapiro's name should have been given in response to Miss Casey's inquiry for the driver. Miss Casey, by whom the information for the policy was obtained, has no personal recollection of the conversation. In one place she expresses an opinion that there was a mistake on the part of the policy writing clerk in filling in the name of Shapiro, and that the clerk, on seeing a blank oppo-

site the specified chauffeur's endorsement, should have come back for better information, but she does not know whether in point of fact the clerk did so come back.  In another place she testifies that the absence of a name regularly indicated that the owner's name should be inserted, as it was, and that if the name of Nelson Johnson had been given her while she had the information sheet she would have put it down. She testified, further, that for insurance on cars to be driven by the owner there was a lower rate of premium than that which she gave, but this is contradicted by other persons in the office, upon reference to a manual of rates produced in court.

The result of this testimony seems to us to be that the point is at least left in controversy, and doubtful.  One party gives positive testimony of furnishing Nelson Johnson's name for the policy, the other party cites facts and circumstances which are hardly consistent with that testimony; and the testimony of the former agent, Miss Casey, rather confirms these facts and circumstances.  On the whole, our conclusion is that the court could not say with sufficient assurance that the insurer and Miss Casey united in an intention to insert the name of Nelson Johnson as the driver to be covered specifically.  And this conclusion, without taking up other questions argued by the parties, requires that the decree be reversed and the bill of complaint be dismissed.

> *Decree reversed and bill of complaint dismissed, with costs to the appellant.*