CANATELLA ET AL. *v.* DAVIS

[No. 160, September Term, 1971.]

*Decided January 17, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*William A. Hahn, Jr.,* for Real Estate Title Co., Inc., and Lawyers Title Ins. Corp., part of appellants. *Rolf A. Quisgard,* with whom was *Charles W. Held, Jr.,* on the brief, for Joseph Canatella, Jr., et al., other appellants.

*Thomas F. Comber, 3d* for appellee.

SMITH, J., delivered the opinion of the Court.

When the appellants, Joseph Canatella, Jr., et al. (Canatella), conveyed to appellee Andrew W. Davis (Davis) much less land than he contracted to purchase, he sued them, appellants Real Estate Title Company, Incorporated (Real Estate Title), which corporation did the title search, and Lawyers Title Insurance Corporation (Lawyers Title), and the broker. A motion to dismiss was granted at the conclusion of all of the evidence as to the broker. There is no appeal here from that action. The court entered a judgment in the amount of $6,600 in favor of Davis against Canatella, Real Estate Title, and Lawyers Title. We shall reverse the judgment as to Canatella and Lawyers Title, and affirm as to Real Estate Title.

The seeds of this controversy were sown when Davis saw in a Baltimore newspaper an advertisement for the sale of six acres of land on Mountain Road in Harford County. He entered into a contract a few days later

with Canatella for the purchase of land described as being "North Side of Mountain Road" and "having a frontage of 400 feet, more or less, and a depth of 600 feet, more or less." No other description was included in the contract. The broker's representative advised Davis that her company "ha[d] a service to their clients and would take care of this for [him], that is, would get the title searched, the title insurance and even the percolation test." He agreed since "[i]t sounded very attractive." Real Estate Title was employed to do the title search and procure the title insurance.

Reference to the attached plat on which the width of the streets has been slightly exaggerated for purposes of reproduction will aid in an understanding of this case. The reporter is directed to reproduce it. It is taken from a plat recorded among the land records of Harford County by Joseph Canatella, Sr., in 1954 which refers to a subdivision known as "Happy Acres."

Lots 1 and 14 were on the east side of Mountain Road, which road ran almost due north and south. Dividing these two lots was a street known as "Jay Cee Drive," which ran almost due east and west. To the east of these lots was "William Avenue," which was described in the testimony as being a "paper street." Lot 10 fronted on the east side of William Avenue and ran back to Lot 8 which with Lot 7 was on the south side of Jay Cee Drive. Lots 1, 7, 8, 10, and 14 were all owned by Canatella when the State Roads Commission in connection with the construction of what is now the Kennedy Expressway acquired from Canatella all of Lots 7, 8, 10, and 14, and a substantial portion of Lot 1, although Lot 14 is not referred to in this proceeding. It will be noted that the contract was in error in referring to the land as being on the north side of Mountain Road.

Davis appeared for settlement. He was advised then by a representative of Real Estate Title that the land was in two parcels. He was shown a plat on which Lot 1, containing two acres, was pointed out as one parcel

and "an 'L' shaped parcel of land bordering on Kennedy Highway and William Avenue that was supposedly four acres" was said to be the remainder of the six acres. Davis refused to settle until he saw the land. The entire Canatella family was present for settlement. Accordingly, they signed the deed which was held in escrow until Davis viewed the land. He and the real estate agent were unable to locate the four acres. William Street was unknown in the area. Davis said he would buy the two acres he could see (Lot 1). When informed that Canatella would not split the property he agreed to buy both parcels and consummated the transaction. The deed was prepared by Real Estate Title. The description in the deed is as follows:

> "[A]ll that lot of ground situate, lying and being in Harford County, in the State of Maryland, and described as follows, that is to say
>
> "BEING KNOWN AND DESIGNATED as Lot No. 1, as set out and shown on the Plat entitled 'Happy Acres,' which Plat is recorded among the Land Records of Harford County in Plat Book G.R.G., No. 5, folio 45; containing 2.0 acres of ground, more or less.
>
> "BEGINNING for the second and being known and designated as Lots Nos. 7, 8 and 10 as set out and shown on the Plat entitled 'Happy Acres', which Plat is recorded among the Land Records of Harford County in Plat Book GRG No. 5, folio 45, saving and excepting therefrom all that lot or parcel of ground taken by the State Roads Commission of Maryland and set forth on SRC Plats Nos. 14747, 14748, 14750, 14751, 26555, 26559 and 26560, for improvements to the Northeastern Expressway.
>
> "BEING PART of all that lot of ground which by Deed dated October 31, 1952 and recorded among the Land Records of Harford County in Liber GRG No. 384, folio 316 was granted

and conveyed by William H. Filbert and Regina B. Filbert, his wife, unto Joseph Canatella; the said Joseph Canatella having died on or about the 24th day of February, 1959, leaving a Last Will and Testament, which is of record in the Office of the Register of Wills for Baltimore City in Wills Liber 272, folio 114, wherein the above property was devised unto the herein grantors.

"It being the intention of the grantors herein by the execution of this Deed, to convey unto the Grantee, all of the remaining land of the grantors situate in the first election district of Harford County and acquired by Joseph Canatella under the above mentioned Deed."

Lawyers Title issued an interim binder. Lot 1 of Happy Acres is described in the binder by metes and bounds, courses and distances. The second parcel is described as Lots 7, 8, and 10 of the subdivision "saving and excepting therefrom" the land "taken by the State Roads Commission of Maryland" as set forth on the plats previously mentioned. Subsequent to settlement a policy of title insurance was issued by Lawyers Title to Davis in which the land involved is described only as Lot 1 of Happy Acres with the added statement, however:

"BEING the same property which by Deed dated September 27, 1966 and recorded among the Land Records of Harford County in Liber G.R.G. No. 725 Folio 516 was granted and conveyed by Barbara M. Canatella, Widow, et al to the Insured."

Davis first learned that he had a problem relative to this land when State Roads Commission representatives sought to acquire land from him for an additional exit from the Kennedy Expressway at Mountain Road. He then learned that the State Roads Commission owned all of Lots 7, 8, and 10, and .4 acres of Lot 1.

All of the State Roads Commission plats to which

reference was made in the deed were introduced into evidence. Plat 14747 shows the taking of virtually all of Lot 14 shown as owned by Canatella. It shows additional land to be acquired to the south on Plat 26555. Plat 26555 shows acquisition of the complete remainder of Lot 14 to the south and a small parcel to the north. Plat 14750 shows a taking from Canatella of a portion of Lot 10. It indicates that land to the south of what is shown for the new road is extra land to be acquired on Plat 26560. Plat 14751 indicates acquisition by the State Roads Commission of an additional portion of Lot 10 and part of Lots 7 and 8. It shows that extra land is to be acquired to the south as shown on Plat 26560 and to the north as shown on Plat 26559. Plat 26559 indicates acquisition of all of Lots 7 and 8 between the north right-of-way line of the highway and the north line of those lots. Plat 26560 reflects acquisition of all of Lots 7, 8, and 10 south of the south right-of-way line of the highway. Plat 14748 does not contain any reference to any lot number in the Happy Acres subdivision. Anyone with a rudimentary knowledge of plats who had seen the plat of Happy Acres would recognize Plat 14748 as calling for acquisition of a substantial portion of Lot 1 and as having no bearing at all on Lots 7, 8, and 10. Any person experienced in searching titles would have no difficulty in reaching the conclusions relative to the State Roads Commission plats we have set forth, lot lines being shown and designated as property lines on those plats, and William Street and Jay Cee Drive being clearly shown.

Davis sued Canatella on two counts. The first was an action in deceit claiming that those defendants "fraudulently and deceitfully misrepresented to [Davis] that they owned and were selling to him approximately six acres of land in Harford County," stating that the "misrepresentations were made for the purpose of defrauding [Davis] and which they knew or should have known to be false and/or were made with reckless disregard for the truth or falsity thereof, having previously conveyed all but 1.6 acres of the property to the Maryland State

Roads Commission." The second count claimed against Canatella on the basis of breaches of the covenants against encumbrances, of special warranty, and for further assurances. The third count was against Real Estate Title. It alleged negligence in the examination of title and in the preparation of the deed and title policy. The fourth count was also against Real Estate Title and alleged breach of contract in the various transactions. The fifth count is against Lawyers Title. After first claiming under the policy, it then went on to state:

"and in the alternative, if said policy is construed so as not to cover or insure plaintiff's title to any portions of Lots 7, 8 and 10 of 'Happy Acres', because of the description thereof in the deed or the failure to specifically refer thereto in the policy, defendant, Insurance Co., thereby breached its contract to furnish the plaintiff with a policy covering all of the land conveyed or intended to be conveyed to him by defendants, Canatella, and said defendant would, therefore, be and remain liable and obligated to compensate the plaintiff for all damages which he has sustained by reason of his having failed to receive good title to those portions of Lots 7, 8 and 10 of 'Happy Acres', totaling 4.47 acres, which said defendant knew, or should have known through its agents, servants or employees, were intended to be conveyed to the plaintiff."

The sixth count is also against Lawyers Title. After repeating the allegations of the fifth count, it claimed:

"10. If the aforesaid title policy does not cover those portions of Lots 7, 8 and 10 of 'Happy Acres', totaling 4.47 acres, which defendant, Insurance Co., knew or should have known, through its agents, servants or employees, was intended to be conveyed to the plaintiff and cov-

ered by the title policy, then this omission and error in the drafting of the policy was due either to fraud or mistake and lack of reasonable care in the preparation of the policy by defendant, Insurance Co., and said defendant, is liable to the plaintiff for all damages sustained by the plaintiff as a result of the fraud or negligent mistake or omission on the part of defendant, Insurance Co."

When the State Roads Commission acquired from Davis the remainder of Lot 1 he was paid $2,400. The judgment in the amount of $6,600 was the difference between the $9,000 Davis paid Canatella and the sum he obtained from the State Roads Commission. The conveyance to the State Roads Commission by Davis was of all of the land that actually passed to him under the deed from Canatella.

## CANATELLA APPEAL

### A. Deceit

The criteria for recovery in an action of deceit were set forth by Judge Marbury for the Court in *Suburban Mgmt. v. Johnson*, 236 Md. 455, 204 A. 2d 326 (1964):

"The elements of legal fraud are: (1) that a representation made by a party was false; (2) that either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him; (3) that the misrepresentation was made for the purpose of defrauding some other person; (4) that that person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that that person suffered damage directly resulting from the misrepresentation. *Appel v.*

*Hupfield,* 198 Md. 374, 84 A. 2d 94; *Gittings v. Von Dorn,* 136 Md. 10, 109 Atl. 553." *Id.* at 460.

See also *James v. Goldberg,* 256 Md. 520, 528, 261 A. 2d 753 (1970) ; *Iula v. Grampa,* 257 Md. 370, 383, 263 A. 2d 548 (1970), and 1 *Poe, Pleading and Practice* § 198 (5th ed. Tiffany 1925).

John H. Canatella was the only member of his family who testified. He said there were 115 to 116 acres in the original tract, that his father died in 1959, that as the family understood it they had 30 acres left when his father died, and that he understood that what the State Roads Commission took from them was 21 acres for which it paid $21,000. He further testified that after the taking by the State he went to "the department that handles the assessments" at the courthouse in Harford County "to determine the extent of property that [they] were paying taxes on that apparently belonged to [them]." He said he was advised that the remainder was "six acres, six plus something." The members of the family took turns paying the taxes thereafter. Canatella introduced into evidence the tax bills for this property in the name of Davis for the 1967-68 and 1968-69 fiscal years. They each show 6.47 acres.

Mrs. Allinson, the real estate saleswoman, called as a witness for plaintiff, testified it was indicated to her that Canatella owned land on the corner of Jay Cee Drive and Mountain Road (which was correct). One of the Canatella family gave her the tax bill. From this she reached a conclusion as to the road frontage.

In *Boulden v. Stilwell,* 100 Md. 543, 60 A. 609 (1905), Judge Pearce said for the Court in discussing deceit:

> "The foundation of the action is actual fraud, and nothing short of this will suffice. Consequently, a misrepresentation believed by the speaker to be true, though induced by his ignorance or negligence, will not sustain an action for deceit." *Id.* at 552.

We conclude on the issue of deceit that Davis has failed to establish the second element necessary. He has not shown that Canatella knew the statement of acreage to be false and it can hardly be said that "the misrepresentation was made with such reckless indifference to truth to impute knowledge to [Canatella]" when he assumed the correctness of the assessment records of Harford County.

## B. The Covenants

Canatella urges that the contract of sale was not admissible to vary the terms of the deed, citing *Mullins v. Ray*, 232 Md. 596, 194 A. 2d 806 (1963), where Judge Marbury said for the Court:

> "The legal principles which govern here are well established in Maryland. As long ago as 1869, Judge Miller, speaking for the Court, said in *Bladen v. Wells*, 30 Md. 577, 581:
>
>> 'No principle of law is more firmly settled than that which excludes parol evidence from being used either at law or in equity for the purpose of contradicting, adding to, subtracting from, or varying the terms of a deed, or controlling its legal operation and effect, except where it is impeached for fraud, or where it is sought to be reformed upon the allegations of fraud, accident or mistake.'
>
> This is generally referred to as the merger doctrine, and many decisions pertinent thereto are collected in 6 M.L.E., *Conveyances*, § 94." *Id.* at 598-99.

Davis also points out that, without objection, the real estate agent testified that she showed Davis land "at the corner" which had a six hundred foot frontage on one street and ran back four hundred feet in depth. She further said that even after the discrepancy relative to the "L" shaped portion of land on the plat was brought

up at the time the settlement was first set, that there was never any indication that Davis was acquiring anything other than six and a fraction acres. She was under the impression that the Canatellas told her approximately how much land they owned, exhibiting to her the Harford County tax bill. They did not point out the land to her. They told her it was at the corner of Jay Cee Drive and Mountain Road and she "went up and found it."

The parol evidence rule is not a rule of evidence, but a substantive rule of law. *Foreman v. Melrod,* 257 Md. 435, 442, 263 A. 2d 559 (1970); *Rinaudo v. Bloom,* 209 Md. 1, 120 A. 2d 184 (1956); and 3 *Corbin on Contracts* § 573 (1960) citing *Rinaudo* in the text.

The concept expressed in *Mullins* has been expressed many times by this Court, *e.g. Heckrotte v. Riddle,* 224 Md. 591, 595, 168 A. 2d 879 (1961); *Millison v. Fruchtman,* 214 Md. 515, 518, 136 A. 2d 240 (1957); and *Gilbert Const. Co. v. Gross,* 212 Md. 402, 409, 129 A. 2d 518 (1957). Davis says, however, that the rule does not apply in instances of fraud, accident, or mistake, pointing to *Levin v. Cook,* 186 Md. 535, 538, 47 A. 2d 505 (1946); *Buckner v. Hesson,* 159 Md. 461, 464, 150 A. 852 (1930); *West Boundary Co. v. Bayless,* 80 Md. 495, 507, 31 A. 442 (1895); and *Bladen v. Wells,* 30 Md. 577, 581 (1869). In *Levin* the antecedent contract was admitted into evidence because of a collateral agreement. In *Buckner* there was a bill for specific performance of a contract to convey. The issue was decided upon demurrer. There was a contract by which land was to be conveyed "clear and free from the payment of any ground rent." The habendum clause in the conveyance, called a deed but actually an assignment, as this Court pointed out, recited that the grantor would assume payment of the ground rent. Citing *Bladen v. Wells, supra,* this Court held a conveyance in fee simple was required, stating:

> "In this case, though the appellant argues that the appellee has not in terms charged the appellant with fraud, accident, or mistake in the transaction, we think it is so stated as to come

under at least one of these heads, and the appellant should be required to answer the bill of complaint." *Id.* at 464.

*West Boundary Co.* was an equity action in which this Court affirmed a decree dismissing the bill after demurrer. It recognized the fraud, accident, or mistake doctrine by way of dicta. It held the contract merged into the deed.

In *Bladen* Judge Miller said for our predecessors:
"No principle of law is more firmly settled than that which excludes parol evidence from being used either at law or in equity for the purpose of contradicting, adding to, subtracting from, or varying the terms of a deed, or controlling its legal operation and effect, except where it is impeached for fraud, or where it is sought to be reformed upon the allegations of fraud, accident or mistake. It would be useless to cite the numerous instances in which our predecessors have enforced this doctrine, and held that all oral negotiations or stipulations between the parties preceding or accompanying the execution of a written instrument, are to be regarded as merged in it, and the latter treated as the exclusive medium of ascertaining the agreement by which the contracting parties bound themselves." *Id.* at 581.

In holding the general rule applicable to the case and the case not within one of the exceptions, he went on to say:
"If a party, after conveying by solemn *deed* the *whole* of his farm for a *specified sum* of money which has been paid to him, can set up an antecedent or accompanying parol contract like the present, contradicting the deed both as to price and quantity, there would be very little room for the operation of the rule, and very little

security or safety in such instruments, or in titles held under them." *Id.* at 583. (Emphasis in original.)

Davis might well have cited *Hoffman v. Chapman,* 182 Md. 208, 34 A. 2d 438 (1943). That was an action in equity to reform the deed. The grantees in the deed had contracted to purchase a lot 96 by 150, only a portion of the land of the grantors, the remainder being improved by other dwelling property. All of the land of the grantors was mistakenly included in the deed. The grantees refused to convey back and the grantors entered suit in equity to reform the deed on the ground of mistake. Judge Delaplaine there said for the Court:

> "It is a general rule of the common law that parol evidence is inadmissible to vary or contradict the terms of a written instrument. *Markoff v. Kreiner,* 180 Md. 150, 23 A. 2d 19. But equity refuses to enforce this rule whenever it is alleged that fraud, accident or mistake occurred in the making of the instrument, and will admit parol evidence to reform the instrument, even though it is within the Statute of Frauds." *Id.* at 210.

He explained at page 211, "Equity reforms an instrument not for the purpose of relieving against a hard or oppressive bargain, but simply to enforce the actual agreement of the parties to prevent an injustice which would ensue if this were not done." See "Deed as superseding, or merging, provisions of antecedent contracts imposing obligations upon the vendor," 84 A.L.R. 1008 (1933) and 38 A.L.R.2d 1310 (1954), and "Remedy in case of mistake or fraud respecting actual application on the ground of a correct description in a deed or other instrument," 149 A.L.R. 749 (1944). See also 3 *Corbin op. cit.* §§ 587, 604, and 614, and 6 *Corbin on Contracts* § 1319 (1962).

This is an action at law for damages, not an action in equity for reformation as in *Hoffman,* nor an action in

equity for specific performance as in *Buckner*. The circumstances of this case might well have dictated the consideration of the contract had the suit been in equity to reform the deed. In this jurisdiction there is a difference between law and equity, and Davis chose his form of action. We do not find any exception under which this case would fit, nor do we find that the fact that Mrs. Allinson, the real estate saleswoman, testified without objection changes the substantive rule that the contract was merged into the deed. Therefore, the contract should not have been considered against Canatella. It was admissible in evidence, however, since it was an integral part of the case against Real Estate Title. It would have been admissible not for the purpose of varying the deed, but for the purpose of showing what instructions had been given to Real Estate Title.

Davis saw the language of Code (1966 Repl. Vol.) Art. 21, §§ 92 and 93 as permitting him to recover for the breach of the covenants against encumbrances and for further assurances if this contract were properly before the court, because those sections refer not only to the land conveyed but to the land "intended so to be." Looking at the four corners of the deed to determine the land intended to be conveyed, one determines that Canatella intended to convey and Davis intended to receive 1.6 acres, the amount actually conveyed. Likewise, despite the assertion of Davis that he should recover for a breach of his special warranty because he did not receive two acres in the first parcel, there is no liability under that covenant since the deed makes it crystal clear that the parties intended to convey only the land which remained in the name of Canatella. Accordingly, the trial court was in error in entering judgment in favor of Davis against Canatella.

## REAL ESTATE TITLE

In *Corcoran v. Abstract Co.*, 217 Md. 633, 143 A. 2d 808 (1958), the liability of a title searcher was discussed by Judge (later Chief Judge) Henderson for the Court:

> "One who undertakes to examine a title for compensation is bound to exercise a reasonable degree of skill and diligence in the conduct of the transaction. This liability, 'although ordinarily enforced by an action of case for negligence in the discharge of his professional duties, in reality rests upon his employment by the client and is contractual in its nature.' *Watson v. Calvert Bldg. Ass'n,* 91 Md. 25, 33. It is generally recognized that damages are recoverable on the theory of a breach of contract, and the legal situation is not changed by the fact that the contractual act bargained for is negligently performed." *Id.* at 637.

This case was tried by the court. In such situation under Rule 886 the judgment "will not be set aside on the evidence unless clearly erroneous." There was ample evidence here from which the trial judge could conclude, as he did conclude, that Real Estate Title did not use the skill and diligence Davis had a right to expect.

## LAWYERS TITLE

In this Court Davis takes the position that Lawyers Title is liable on the basis of fraud or negligence.

Davis sets forth as the basis of his fraud claim the fact that reference to Lots 7, 8, and 10 was omitted from the title insurance policy as finally issued, contending that between the time of the issuance of the binder and the issuance of the final policy Lawyers Title "became aware of the Canatella's lack of title to any portions of Lots 7, 8 and 10 and purposely omitted said coverage from their policy" for that reason. We do not interpret this omission as evidence of fraud because as the policy was actually written we interpret the original reference to Lots 7, 8, and 10 as having in effect been included by the terminology in the policy that the land referred to is the same land described in the deed from Canatella to Davis.

There can be no liability on the part of Lawyers Title to Davis under the policy itself because the effect of the description used is to insure the title to the 1.6 acres of land actually conveyed. No problem has arisen relative to that.

On the issue of negligence, Davis says that "if the omission to cover portions of Lots 7, 8 and 10 was a result of negligence or lack of care in the preparation of the policy, [Lawyers Title] would not be excused by such negligence, but [Davis] would be entitled to have the policy reformed to read in accordance with the understanding of the parties," citing *Moyer v. Title Guarantee Company,* 227 Md. 499, 177 A. 2d 714 (1962). *Moyer* was, indeed, an action by a title insurance company to have a policy of insurance reformed. In this case Davis did not see fit to go into equity for the purpose of reformation of the policy as was done in *Ben Franklin Ins. Co. v. Gillett,* 54 Md. 212 (1880); *Dela. F. & M. Ins. Co. v. Gillett,* 54 Md. 219 (1880); and *Automobile Ins. Co. v. Shapiro,* 151 Md. 383, 135 A. 163 (1926). An insurance agent or broker may be liable to an insured for the broker's or agent's failure to exercise reasonable diligence and due care by procuring a void or defective policy, as this Court held in *Lowitt v. Pearsall Chemical,* 242 Md. 245, 219 A. 2d 67 (1966), but Davis has cited no authority for holding an insurance company liable to an insured on an unreformed policy on the basis of such negligence. Accordingly, we conclude that the trial judge erred in finding liability against Lawyers Title.

> *Judgment affirmed as to Real Estate Title Company, Incorporated; judgment reversed as to Lawyers Title Insurance Corporation and Joseph Canatella, Jr., et al.; costs to be paid by Real Estate Title Company, Incorporated.*