FAGIOLO et al. *v.* MENCARINI

[No. 381, September Term, 1963.]

438

*Decided November 10, 1964.*

*Motion for rehearing filed December 10, 1964, denied December 15, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Foster Wood,* with whom was *Robert S. Bains* on the brief, for the appellants.

*Hal C. B. Clagett,* with whom were *Sasscer, Clagett & Powers* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

On this appeal, present counsel, who were not counsel below, have made an earnest and sincere effort, with a record which leaves them no chance of success, to change the defeat of their clients' claims below into victory here. (No reflection on trial counsel is intended. Lawyers cannot manufacture evidence.)

In the trial below, the court held that the Ohio Guest Statute, Ohio Revised Code § 4515.02, which requires a successful plaintiff-guest to establish, on the part of his host-operator, a higher degree of negligence than a failure to exercise ordinary care and caution under the circumstances, was applicable. Considerable space is consumed in the statements of fact in the briefs to show, on the one hand that appellants were, and on the other hand that they were not, guests of the appellee at the time of the injuries complained of. However, in the view that we take of the case, this contention of the appellants becomes purely academic; for we think the record fails to establish a prima facie case of primary negligence on the part of the appellee, even though the "ordinary care and caution" test be applied.

After the conclusion of the plaintiffs' case below, the court granted a defense motion for a directed verdict; the propriety of this ruling and a subsidiary one on the admissibility, *vel non,* of certain evidence are the only questions presented for our determination.

The facts are few, and may be very briefly stated. The appellants and the appellee are of foreign extraction and friends of long standing. They, together with appellee's wife, took a motor trip to Chicago in an automobile owned by the appellee. On the return trip on August 26, 1961, while appellee was driving on the Ohio Turnpike at about the speed limit (which one

witness thought was 65 miles per hour), the car suddenly went out of control, ran off the road, and overturned.

The only testimony produced which appertained in any manner to possible negligence on appellee's part follows: Romeo E. Fagiolo, one of the appellants, was riding on the front seat beside the operator. He was "looking at the map because we were getting ready to stop. And suddenly I heard a loud noise and the car went out—the car lost control [sic], and after that I don't remember anything." After hearing the noise, he "saw the hood up in the air and that is all" he remembered. He later had a conversation with appellee, who told him that after appellee came back home appellee went to see a "service man" in a gas station, and while appellee was telling the service man "about the tire," the service man "threw his hands up in the air." The witness had not heard any peculiar noises about the car before the "loud noise," and he had not made any objections to the appellee as to the manner in which he was driving.

Rosina S. Fagiolo, the other appellant, stated: "Well, the accident was, I was riding in the car and all at once I heard a blast and I felt it go up in the air and I don't remember nothing more."

Romeo J. Fagiolo, appellants' son, testified that after the accident the appellee related to him the events that led up to it. Appellee explained to the witness that "he had been hearing a whistle, and that on several occasions he had even moved his head closer to the window to determine the origin of the noise." Thereafter, appellee "heard this noise, or an explosion, in which the car had a tendency in the front end to rise or have a lift, and at that point on there was no control [over the car]." In another conversation, appellee "made the notation that perhaps he should have looked into this noise more closely, or that he—that the noise could have avoided the accident [sic]." This is all of the evidence offered to establish primary negligence.

In the trial court's statement to the jury in ruling on the motion for a directed verdict, the judge said the right rear tire had apparently blown out, but there is no evidence included in the record extract, except the casual remark of one witness that appellee had told someone about "the blow out that he had on this tire, relative thereto."

This is about as "thin" an attempt to show primary negligence as we have ever had presented to us, or of which we have heard. There isn't the slightest proof as to what, in fact, caused the car to go out of control, or that the appellee had any prior knowledge of any defect in his automobile. Nor is this a case where a driver, without any explanation, suddenly runs his motor vehicle off the road, causing injury to a passenger, *Hanes v. State, Use of Lamm*, 236 Md. 28; here plaintiffs' testimony establishes, beyond question, that something unusual and unexpected happened just prior to the car going out of control.

Appellants argue, at this point, that it was negligence on appellee's part not to have stopped and ascertained its cause after he heard the "whistle." This argument fails for at least two reasons. First, there are many kinds of noises which may be described as "whistling" ones. A trifling one may be caused by a slight opening of the car's windows; on the other hand, a loud, strongly audible, unfamiliar whistling-noise may be of such a nature as to call for a careful and prudent driver to stop and to attempt to ascertain its cause. There is nothing in the record before us which discloses that the whistling-noise heard by appellee was of the latter character. Second, it is fundamental that to be successful in a tort action based upon negligence a plaintiff must show three things: (1) a duty owed by the defendant to the plaintiff; (2) a violation of that duty by the defendant; and (3) damages resulting from the violation, i.e. that the violation was a proximate cause of the damages. Here, if we assume, without deciding, that appellee was negligent for not having stopped immediately upon hearing the whistle, there is not a shred of evidence to establish any causal connection between the whistle and the happening of the accident. For the jury to have found in favor of the plaintiffs against the defendant on the latter two of the above named three essentials for recovery in tort actions, the jury would have had to have based its verdict upon pure surmise, conjecture and speculation, which we have frequently and consistently said is impermissible. We, therefore, hold that the trial court was correct in its directing a verdict in favor of the defendant.

This leaves the question relative to the trial court's sustain-

ing of an objection to certain testimony offered by appellants. From the record as it is submitted to us, it is difficult to state the contention involved concisely and with certain accuracy. The trial judge said that his mind was "a little confused about this situation." And appellants do not seem to rely upon the contention very heavily, for they devote but a single sentence in their argument in their brief thereon.

As we read the record, it appears that a witness, one Gloria Shaw, was called by the appellants and asked to relate a conversation that she had had with the appellee, in which the appellee had told her of a conversation that he had had with a gas station attendant, relative to a tire (which, apparently, was on appellee's car at the time of the accident and had blown out). The appellee objected on the ground that the statement of the gas station attendant, even though made to him, was hearsay. The court informed counsel that he would admit any statement made by the defendant into evidence, except "what the defendant says someone else told him about this occurrence," feeling that the latter would be hearsay. Again, we make an assumption without deciding the point involved. Here, we assume, without deciding, that the proffered evidence did not come within the proscription of the hearsay rule, for an analysis of the proffer of appellants' counsel shows that the exclusion of the evidence was not prejudicial to appellants' case. The proffer was: "I [appellants' counsel] am fairly confident that what Your Honor is about to hear [if the witness be allowed to testify] is a comment by the gas station attendant concerning the tire which blew out *but not about how the accident happened or why it happened * * * or anything like that."* (Italics added.) It is difficult to conceive of how a "comment" of a gas station attendant (who was not shown to have ever visited the scene of the accident, who was not shown to have seen the tire, and who was not attempted to be qualified as an expert) concerning a tire's having blown out could have aided the appellants' cause, if the comment did not throw any light on "how the accident happened or why it happened * * * or anything like that." Surely, the courts of today, with their heavy calendars, should not be expected to be required to consume

their time in the taking of irrelevant testimony, which has no probative value.

It will be noted, also, that the proffer is deficient in not stating, at least in substance, what the "comment" was to be. It would, indeed, be regrettable for a judgment to be reversed on the ground that a possible "comment" of a witness should have been admitted into evidence, and to discover, on remand, that the actual "comment" had nothing to do with the issues involved. Neither common sense nor justice dictates a course that would permit such a possibility.

*Judgment affirmed, with costs.*