WILLIAM T. BOGLEY *v.* MIDDLETON TAVERN, INC. AND AETNA CASUALTY & SURETY COMPANY

[No. 55, September Term, 1979.]

*Decided June 5, 1980.*

*Per Curiam filed October 22, 1980.*

*Motion for reconsideration and clarification filed July 7, 1980 and per curiam filed issuing an amended mandate on October 22, 1980 and motion denied, see per curiam at page 653 infra.*

The cause was argued before SMITH, DIGGES, ORTH, COLE and DAVIDSON, JJ., and reargued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

Argued and reargued by *William M. Nickerson* and *Larry M. Waranch,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellant.

Argued and reargued by *Richard R. Beauchemin,* with whom were *Joel G. Fradin* and *Arnold, Beauchemin & Tingle, P.A.* on the brief, for appellees.

The motion for reconsideration and clarification was submitted to MURPHY, C. J., and SMITH, DIGGES, COLE, DAVIDSON and RODOWSKY, JJ. Judge Eldridge did not participate in the consideration of the motion.

DIGGES, J., delivered the opinion of the Court. Per Curiam on motion for reconsideration and clarification at page 653 *infra.*

This action was initially instituted by Middleton Tavern, Inc. in the Circuit Court for Anne Arundel County against the petitioner William T. Bogley (Bogley) [1] and respondent Aetna Casualty and Surety Co. (Aetna), as defendants, to recover under an insurance policy the business interruption loss the insured sustained when its Annapolis tavern was extensively damaged by fire.

From the pertinent facts, either undisputed or implicitly established by the jury verdict in this case, we learn that Bogley sold to Middleton an Aetna fire insurance policy covering its tavern that, in addition to insuring against other types of damage, contained a business interruption loss reimbursement provision. The original one year policy was renewed for a three year period and it was during this latter time frame that the tavern was partially destroyed by fire on November 25, 1973. When, because of the wording of the contribution or co-insurance clause as set out in the issued policy, the insured was not fully reimbursed by the insurer for its business interruption loss, Middleton docketed this suit against Aetna and Bogley claiming that the co-insurance clause was not in accord with the insurance contract the tavern corporation purchased.

By its multicount amended declaration, containing one count sounding in tort and one in contract against each of the two defendants separately, Middleton, in essence, asserted: count 1 — Bogley through his negligent conduct

---

1. In addition to William T. Bogley, this action, as instituted in the trial court, included as insurance agents being sued, Bogley and Harting, Inc., doing business as Bogley, Harting and Betts, Inc. The record discloses that William T. Bogley was vice-president of that corporate defendant. Bogley and Harting, Inc., although joining William T. Bogley in noting an appeal to the Court of Special Appeals, neither filed a brief in that court nor sought review by this Court.

failed to obtain the necessary insurance coverage for fire-caused business interruption of the duration here, which would have reimbursed the insured to the extent of $61,183 rather than the $23,285.07 paid under the policy as actually written; count 2 — Bogley breached his agreement to obtain for Middleton the amount of business interruption by fire coverage mentioned in count 1; count 3 — Aetna, acting through its agent (Bogley), negligently failed to provide for Middleton business interruption by fire coverage in the amount stated above as that insurance company, through this same agent, had agreed to do; and count 4 — Aetna breached its agreement, entered into through its authorized agent (Bogley), to provide the previously mentioned amount of business interruption by fire coverage. Each defendant responded to this declaration with a general denial and, in addition, filed a cross-claim seeking indemnification from the co-defendant for any damages awarded Middleton against it.

At the ensuing jury trial the vitality of the cross-claims were not litigated, but by agreement were reserved for decision by the judge at a later time in the event the jury's verdict was in favor of Middleton against both Aetna and Bogley. Judge Lowe for the Court of Special Appeals explains what then took place:

> Under the jury's view of the facts, both Bogley and Aetna were liable [to Middleton for $21,714.93 in damages]. Presumably, in anticipation of deciding the cross-claims, the trial judge determined unprecedentedly, by inquiry of the foreman [before the jury was discharged], that the jury had decided not only that "Bogley was acting as an agent for [Aetna]," but also that its verdict was arrived at on the basis of both the negligence and the contract counts.[2]

---

2. Although we do not pursue the matter, it may well be that many of the problems which developed in this litigation would have been avoided had the claims and issues been more sharply identified. Likewise, it is doubtful that the manner in which the issues were submitted to the jury for decision and the form of the judgments entered were in accord with recognized trial practice.

To the extent divulged, the jury's findings of fact were adopted by the trial judge as his own when deciding the cross-claims [, which by stipulation, were submitted to him only on the evidence presented during the jury trial]. As interpreted by [the trial judge]:

". . . the jury found Bogley negligent and to be the agent of Aetna, with the result that Aetna became liable for its agent's wrongful conduct. There was not and could not be any other theory under the facts and Court's instructions for the jury to find Aetna liable, and in finding Bogley negligent and also the agent of Aetna the jury quite correctly under the Court's instructions found Aetna liable. This is the posture of the case in which the Cross-Claim for indemnity must be decided."

He then entered judgment in favor of Aetna against Bogley on both cross-claims. [*Bogley v. Middleton Tavern*, 42 Md. App. 314, 316, 400 A.2d 15, 17-18 (1979).]

The record here reveals that initially both Aetna and Bogley noted an appeal, but shortly thereafter the insurance company paid Middleton the judgment in full and dismissed its appeal.[3] In the Court of Special Appeals William T. Bogley, while not contesting the right of Middleton to recover from Aetna, contended: (i) that the trial court erred when it permitted the Middleton judgment to be entered so as to include him, an agent for a disclosed principal, as a judgment debtor; and (ii) that not only because of the just mentioned error, but also because Aetna failed to show it had suffered any legally recoverable damage from Bogley's default the judgment in favor of Aetna on its cross-claim against the agent for indemnity cannot stand. When the

---

3. As no party raises the issue, we do not consider the question whether this suit could be maintained against Aetna without first, in equity, reforming the contract of insurance. *See* Canatella v. Davis, 264 Md. 190, 206, 286 A.2d 122, 130 (1972). *Cf.* Housing Auth. of College Pk. v. Macro, 275 Md. 281, 340 A.2d 216 (1975).

intermediate appellate court disagreed and affirmed the judgments as entered by the trial court, this Court granted William T. Bogley's certiorari petition. Since we agree with the petitioner that Aetna failed to establish it had suffered damage caused by dereliction on his part, we will reverse the judgment entered in favor of the insurance company on its cross-claim. With this conclusion it thus becomes unnecessary that we discuss the other issues raised by the petitioner.

In explaining our disagreement with the conclusions reached by the two lower courts, we observe that implicit in the jury's verdict resolving Middleton's base claim against Aetna and Bogley, and as found by the trial judge in disposing of the cross-claims, is that Bogley was a representative of Aetna with authority to issue policies on behalf of the insurance company of the type involved in this case. Like conventional agents, an insurance agent must exercise reasonable care and skill in performing his duties. And if such a representative fails to do so, he may become liable to those, including his principal, who are caused a loss by his failure to use standard care. *Lowitt v. Pearsall Chemical,* 242 Md. 245, 253-56, 219 A.2d 67, 72-74 (1966); *accord, Central Nat. Ins. Co. of Omaha v. Devonshire Co.,* 426 F. Supp. 7, 23 (D. Nebr. 1976), *modified,* 565 F.2d 490 (8th Cir. 1977); *Max Holtzman, Inc. v. K & T Co., Inc.,* 375 A.2d 510, 514 (D.C. 1977); *Washington v. Mechanics & Traders Ins. Co.,* 174 Okl. 478, 50 P.2d 621, 623-24 (1935); 3 *Couch on Insurance 2d* § 25:37, at 335 (1960); *Restatement (Second) of Agency* § 379 (1958). *Cf. Canatella v. Davis,* 264 Md. 190, 206, 286 A.2d 122, 130 (1972) (agent's duty of care to insured). However, it does not follow from what we have just said that the requirement that additional money be paid in connection with an insurance policy as it should have been written, rather than as it was, always measures the damages collectible by the insurance company from its agent. Although the validity of that statement has not before been examined or considered by this Court, it has the approval of the courts of a number of our sister states. *Lumbermens Mutual Insurance Company v. Bowman,* 313

F.2d 381, 388 (10th Cir. 1963) (applying New Mexico law); *Emersons, Ltd. v. Max Wolman Company,* 388 F. Supp. 729, 735 (D.D.C. 1975), *aff'd,* 530 F.2d 1093 (D.C. Cir. 1976); *Millers Mutual Fire Insurance Co. of Tex. v. Russell,* 246 Ark. 1295, 443 S.W.2d 536, 538-39 (1969); *Pennsylvania Millers Mutual Ins. Co. v. Walton,* 236 Ark. 336, 365 S.W.2d 859, 861 (1963); *Max Holtzman, Inc. v. K & T Co., Inc.,* 375 A.2d 510, 514-15 (D.C. 1977); *State Ins. Co. v. Richmond,* 71 Iowa 519, 32 N.W. 496, 499 (1887); *Mathews v. Marquett Casualty Company,* 152 So. 2d 577, 584-85 (La. Ct. App.), *cert. denied,* 153 So. 2d 880 (La. 1963); *Norby v. Bankers Life Co. of Des Moines, Iowa,* 304 Minn. 464, 231 N.W.2d 665, 671 (1975); *Julien v. Spring Lake Park Agency, Inc.,* 283 Minn. 101, 166 N.W.2d 355, 357 (1969); 16 J. Appleman, *Insurance Law and Practice* § 878, at 360-61 (1968 & 1979 Supp.); Annot., 35 A.L.R.3d 815 (1971).

The precept distilled from these authorities may be expressed in this manner: When an agent possessing authority to bind an insurer as the principal with respect to designated types of insurance, negligently, but without violating express instructions of his principal, binds that principal in a manner different from that expressed in the issued policy and which, because of the additional exposure, would have required a larger premium, the agent ordinarily is liable to his principal only for the additional premium. In making its like ruling the Supreme Court of Iowa presented an apt example:

If a merchant's clerk should sell goods on credit, which he is employed to sell in that way, and to a person to whom he might properly sell, but for a price less than he was expressly required to obtain, the measure of the merchant's recovery against the clerk in an action for damages would unquestionably not be greater than the difference between the two prices, and that, too, even if the buyer should become insolvent, and not pay anything. If, on the other hand, the clerk should

sell property of his employer of a kind which he was not employed to sell at all, he probably would be held responsible for the whole value. [*State Insurance Co. v. Richmond,* 71 Iowa 519, 32 N.W. 496, 499 (1887).]

In determining whether the doctrine applies it is quite important that the insurance company be not caused to assume a risk it is not in the business of insuring against or one that it has specifically declined to take. But when an agent possessing authority to bind as principal an insurance company on a risk of the type the company normally accepts, and the principal does not affirmatively show that it would not have accepted the extended obligations of the particular risk then being considered, the insurer's recoverable loss from the agent is normally confined to the difference, if any, between the premium actually collected and the one that would have been collectable had the issued policy included the coverage agreed to between the agent and the insured.

Applying what we have just set out in the context of the case now before us, we find that Aetna, as cross-plaintiff, has in no way attempted to show (nor does the record otherwise indicate) that the full business interruption claim here involved a specifically prohibited risk nor that the agent (Bogley) refused or failed to carry out an unequivocal demand or instruction from the company in writing this policy. Here, the matter of the cross-claims was submitted by agreement solely on the evidence produced in the jury trial of Middleton's claims. No witness was produced by Aetna at that trial and the crucial evidence was not otherwise supplied. Consequently, since Aetna did not meet its burden of showing it was damaged, in that it did not demonstrate that an additional premium would have been payable because of a greater exposure (or, even if it did, the amount of that additional premium), the judgment in favor of Aetna against Bogley on the cross-claim for indemnity must be reversed. *E.g., Scott v. Watson,* 278 Md. 160, 165, 359 A.2d 548, 552 (1976); *Peroti v. Williams,* 258 Md. 663, 669, 267

A.2d 114, 118 (1970); *Fagiolo v. Mencarini,* 236 Md. 437, 441, 204 A.2d 560, 562 (1964).

> ~~Judgment of the Court of Special Appeals reversed as to William T. Bogley, and case remanded to that court with instruction to reverse the judgment of the Circuit Court for Anne Arundel County rendered in favor of Aetna Casualty & Surety Co. against William T. Bogley.~~
>
> ~~Costs to be paid by the respondent, Aetna Casualty & Surety Co.~~

(See amended mandate at page 655 *infra.*)

On Motion for Reconsideration
and Clarification

PER CURIAM:

By his Motion for Reconsideration and Clarification, petitioner William T. Bogley asks this Court to rule on his cross-claim and amend its mandate so as to direct the entry of a judgment of indemnity in his favor against Aetna for any monies he may be required to pay towards satisfaction of the judgment Middleton obtained jointly against Bogley and Aetna. In support of this motion, petitioner contends that since we determined Aetna alone to be the party ultimately responsible to Middleton and since, contrary to the statement in our opinion that Aetna had fully satisfied the Middleton claim, no part of that judgment in fact has been paid, the relief he now seeks should be granted. We agree and accordingly will direct the issuance of an amended mandate.

This court did not specifically deal with the Bogley cross-claim for indemnity against Aetna because, accepting the fact that Aetna had paid the Middleton judgment in full,

there was no occasion to do so under the views we expressed in our opinion. That we were justified in making the statement that "[t]he insurance company paid Middleton the judgment in full and dismissed its appeal" is completely documented by a playback of the tape of the oral argument made by counsel before this Court. This tape records the following:

MR. WARANCH, counsel for petitioner Bogley: This Court has ordered argument today on issues concerned with the joining of contract and tort claims by the plaintiff and cross-claimants and concerning the doctrine of election of remedies. To ascertain if a claim is properly stated —

JUDGE ELDRIDGE: Before you move to that, counselor, I just want to make sure I understand one thing as far as the appeal and your position. Am I correct that nothing in this, as far as the outcome of this appeal, can actually affect Middleton? No one's challenging in this proceeding, in any way, their right to a recovery?

MR. WARANCH: That is correct, Your Honor. I take it that you ask that because you are present today and are wondering if you should remain so [, rather than recuse yourself].

JUDGE ELDRIDGE: That's correct. I just want to make it clear.

MR. WARANCH: That is correct, that has not been challenged and will not be challenged.

JUDGE ELDRIDGE: Okay.

Not only did Aetna's counsel remain silent when counsel for the petitioner made the just quoted statements, but additionally, the tape reveals that during the latter portion of respondent's argument, the following colloquy took place:

JUDGE ELDRIDGE: Before you sit down, do you know if Middleton's been, their judgment against Aetna has been satisfied?

MR. BEAUCHEMIN, counsel for respondent Aetna: The initial judgment?

JUDGE ELDRIDGE: Has Aetna paid Middleton?

MR. BEAUCHEMIN: I'm sorry?

JUDGE ELDRIDGE: Has Aetna paid Middleton?

MR. BEAUCHEMIN: Yes. That's not an issue.

JUDGE ELDRIDGE: I understand that. I just have my own reasons.

MR. BEAUCHEMIN: They honored the contract and paid on the full coverage. I believe that that's stated in the briefs.

The factual assertion that the Middleton judgment had been satisfied by Aetna is binding and in the posture in which this cause reaches us, influences the law of the case. Under the somewhat unorthodox manner in which this entire litigation was conducted, we conclude, for the reasons set out in our earlier opinion, that Aetna must bear the ultimate responsibility for the damages sustained by Middleton. Since it now develops that Bogley may, at the instance of Middleton, be required to pay all or a portion of the insured's judgment, we will amend our mandate to provide for this eventuality.

> *Mandate of June 5, 1980, amended to read as follows: Judgment of the Court of Special Appeals reversed as to William T. Bogley, and case remanded to that court with instruction to reverse the judgment of the Circuit Court for Anne Arundel County rendered in favor of Aetna Casualty & Surety Co. against William T. Bogley and direct the entry of an indemnity judgment in favor of William T. Bogley on his cross-claim.*
>
> *Costs to be paid by the respondent, Aetna Casualty & Surety Co.*

Judge Eldridge did not participate in consideration of motion for reconsideration.