634 A.2d 28

Christine POPHAM et al.

v.

STATE FARM MUTUAL INSURANCE COMPANY et al.

No. 124, Sept. Term, 1992.

Court of Appeals of Maryland.

Dec. 7, 1993.

Reconsideration Denied Jan. 13, 1994.

George P. Haldeman, on brief, Rockville, for appellants.

Charles E. Stoner (Charles M. Preston, Stoner, Preston & Boswell, Chtd., all on brief), Westminster, for appellees.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge (retired), Specially Assigned.

ROBERT M. BELL, Judge.

This appeal and cross-appeal from the judgment of the Circuit Court for Montgomery County, which dismissed all but one of the claims before it, require this Court to determine whether the insurer under an "excess" or "umbrella" personal liability policy that includes automobile liability excess coverage must offer in writing to the insured uninsured motorist coverage up to the limits of the excess automobile liability coverage. That inquiry focuses on Maryland Code (1957, 1991 Repl.Vol.) Art. 48A, § 541(c)(2) and (f). This case also presents the issue whether, by alleging the failure of the insurer and its agent to advise the insured that he could purchase uninsured motorist coverage equal to the liability coverage of the "excess" or "umbrella" policy, the appellants stated a cognizable claim in negligence against the appellees.

I.

While appellant Christine Popham ("Christine") was a passenger, an automobile driven by Michael Paul Dowling was involved in a one car accident. As a result, Christine suffered serious and permanent injuries and incurred more than $40,-000 in medical expenses. The automobile driven by Dowling

was insured by the Maryland Automobile Insurance Fund ("MAIF"), with personal injury liability coverage limits of $20,000/$40,000. Christine was an additional insured on two insurance policies issued to her father, appellant Douglas G. Popham ("Popham") by appellee State Farm Mutual Insurance Co., Inc. ("State Farm"). One, a family automobile insurance policy, provided uninsured motorist insurance coverage, in the same amount as its liability coverage, of $100,000/$300,000. The other, an "excess" personal liability insurance policy, contained liability coverage of $1,000,000, but no uninsured motorist coverage.

The appellants sued State Farm and its agent, appellee Walter Menage ("Menage"). As to State Farm, relying on Maryland Code (1957, 1991 Repl.Vol.) Article 48A, § 541(c)(2), they sought a declaration that they were entitled to uninsured motorist liability insurance coverage under the umbrella policy in the same amount as the liability coverage it provided. In another count, they alleged that both appellees negligently failed to comply with their common law duty to advise Popham, "in writing and in a reasonably commercial manner" of the right to purchase in connection with the umbrella policy, uninsured motorist insurance coverage in the same amount as the liability coverage that policy offered.[1]

The appellees moved to dismiss for failure to state a claim upon which relief could be granted [2] each count of the

---

1. The appellants made two other claims against the appellees: (1) that they breached the statutory duty imposed by Maryland Code (1957, 1991 Repl.Vol.) Art. 48A, § 541(c)(2) and (2) that they violated their fiduciary and professional duty to Popham. Although the appellees address each, the appellants only address the negligence count and, therefore, so do we. In addition, the appellants sued Michael Paul Dowling, alleging that his negligence was the cause of the accident and Christine's personal injuries. Dowling is not a party to this appeal, the action against him not yet having been tried.

2. A motion to dismiss for failure to state a claim, pursuant to Maryland Rule 2–322, serves the same function as the now defunct demurrer. *Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327, 331 (1993); *Odyneic v. Schneider,* 322 Md. 520, 525, 588 A.2d 786, 788 (1991); *Figueiredo–Torres v. Nickel,* 321 Md. 642, 647, 584 A.2d 69, 72 (1991); *Boyd's Civic*

*Ass'n v. Montgomery County*, 309 Md. 683, 686, n. 2, 526 A.2d 598, 600 n. 2 (1987); *Sharrow v. State Farm Mutual Automobile Insurance Company*, 306 Md. 754, 768, 511 A.2d 492, 499–500 (1986); *Broadwater v. State*, 303 Md. 461, 465, 494 A.2d 934, 937 (1985). The motion tests the legal sufficiency of the pleadings, *Sharrow*, 306 Md. at 768, 511 A.2d at 499–500, except that, when matters outside the pleadings are presented to, and relied upon by the court, in which event, it may be treated as a motion for summary judgment. *See Antiqua Condominium Ass'n v. Melba Investors*, 307 Md. 700, 719, 517 A.2d 75, 84–85 (1986). Rule 2–322(c). In ruling on a motion to dismiss for failure to state a claim, the court assumes the truth of all well-pleaded facts, as well as the reasonable and logical inferences which may be drawn therefrom. *Sharrow*, 306 Md. at 768, 511 A.2d at 500. Any ambiguity in the pleadings bearing on whether a cause of action has been pleaded will be construed against the pleader. *Nickel*, 321 Md. at 647, 584 A.2d at 72.

It is well-settled that the grant of a motion to dismiss "is rarely appropriate in a declaratory judgment action." *Broadwater v. State*, 303 Md. 461, 465, 494 A.2d 934, 936 (1985) and cases therein cited. This is so, we have said, because

"[w]here the plaintiff's pleading sets forth an actual or justiciable controversy, ... it sets forth a cause of action, even though the plaintiff may not be entitled to a favorable declaration on the facts stated in his complaint; that is, in passing on the [motion to dismiss,] the court is not concerned with the question whether the plaintiff is right in a controversy, but only with whether he is entitled to a declaration of rights with respect to the matters alleged."

*Hunt v. Montgomery County*, 248 Md. 403, 409, 237 A.2d 35, 38 (1968) (citation omitted). Moreover, because the court ordinarily must declare the rights of the parties when ruling on the merits of a declaratory judgment action, *Broadwater*, 303 Md. at 468, 494 A.2d at 937, "if a plaintiff seeks a declaratory judgment that a contractural clause or legal provision is invalid, 'and the court's conclusion regarding ... validity ... is exactly opposite from the plaintiff's contention, nevertheless the court must, under the plaintiff's prayer for relief, issue a declaratory judgment setting forth the court's conclusion as to validity.' " *Jennings v. Government Employees Ins.*, 302 Md. 352, 355, 488 A.2d 166, 167–68 (1985), quoting *East v. Gilchrist*, 293 Md. 453, 461 n. 3, 445 A.2d 343, 347 n. 3 (1982). An order that states simply that a party's motion to dismiss is granted does not suffice. *Broadwater*, 303 Md. at 469, 494 A.2d at 938.

A situation in which a motion to dismiss a declaratory judgment action is properly granted is where it challenges "the legal availability or appropriateness of the remedy." *Hunt*, 248 Md. at 409, 237 A.2d at 38. We have held that an action for declaratory judgment is not available to resolve questions that have become moot or "where a declaration would neither serve a useful purpose nor terminate a controversy." *Reyes v. Prince George's County*, 281 Md. 279, 289 n. 5, 380 A.2d 12, 18 n. 5 (1977). *See also Haynie v. Gold Bond Bldg. Products*, 306 Md. 644, 511 A.2d 40 (1986) (issues raised in declaratory judgment action will not be considered where they could have been raised in pending tort litigation between the parties); *Aetna Cas. & Sur.*

appellants' complaint pertaining to them. The trial court granted the motion following a hearing, ruling that:

> it is the finding by this Honorable Court that the personal liability umbrella policy or excess policy issued by State Farm Mutual Automobile Insurance Company to Douglas Popham is a motor vehicle liability policy as contemplated by Art. 48A, § 541(c), and as such it would ordinarily be subject to Art. 48A, § 541(c)(2), which would require the insurer to provide written notice to the insured of the opportunity to purchase uninsured motorist coverage in an amount equal to the liability limits of the policy; however, this Court further finds that the legislative intent of Art. 48A, § 541(f), which states that "Policies of insurance that have as their primary purpose to provide coverage in excess of other valid and collectible insurance or qualified self-insurance *may* include uninsured motorist coverage as provided in subsection (c) of this section" (emphasis supplied), is that umbrella or excess policies were not to be included in the definition of motor vehicle liability insurance policies, or, alternatively, was to create an exclusion or exemption to the requirements of § 541(c)(2)....

Finding no just cause for delay, it entered final judgment in favor of the appellees pursuant to Maryland Rule 2–602(b).

---

Co. v. Kuhl, 296 Md. 446, 449 n. 1, 463 A.2d 822, 824 n. 1 (1983) (declaratory judgment action "is inappropriate where the same issue is pending in another proceeding"); Brohawn v. Transamerica Insurance Company, 276 Md. 396, 406, 347 A.2d 842, 849 (1975) ("[W]here as here, the question to be resolved in the declaratory judgment action will be decided in pending actions, it is inappropriate to grant a declaratory judgment.").

Notwithstanding that it is in the same action, the issue presented in the declaratory judgment action was also presented in count III, breach of statutory duty, of the complaint. The resolution of that count renders moot the need for a declaration pursuant to count I. See Reyes, 281 Md. at 289 n. 5, 380 A.2d at 18 n. 5, citing Hamilton v. McAuliffe, 277 Md. 336, 340, 353 A.2d 634, 637 (1976). Thus, viewed in this light, the motion to dismiss properly was granted.

In any event, although it purports to dismiss the declaratory judgment action, the court order also declared the rights of the parties; it set forth the court's construction of the contested statutory provision and, in so doing, clearly delineated the rights of the parties. See Jennings, 302 Md. at 355, 488 A.2d at 167.

The appellants timely appealed to the Court of Special Appeals and the appellees cross-appealed, challenging the finding that an excess or umbrella insurance policy is a motor liability policy as contemplated by Art. 48A, § 541(c). We granted certiorari on our own motion prior to consideration by the Court of Special Appeals in order to consider the issues raised by the appeal and cross-appeal, 329 Md. 22, 616 A.2d 1286.

## II.

Unless an appeal is from a final judgment, the appellate court does not acquire subject matter jurisdiction to review it. *Sisk & Son v. Friendship Packers,* 326 Md. 152, 158, 604 A.2d 69, 72 (1992); *Estep v. Georgetown Design,* 320 Md. 277, 282, 577 A.2d 78, 80 (1990). A judgment is final if it is "so far final as to determine and conclude the rights involved in the action, or to deny to the party seeking redress by the appeal the means of further prosecuting or defending his rights and interests in the subject matter of the proceeding." *In Re Buckler Trusts,* 144 Md. 424, 427, 125 A. 177, 178 (1924). *See also Baltimore City Department of Social Services v. Stein,* 328 Md. 1, 10, 612 A.2d 880, 884 (1992); *Sigma Repro. Health Center v. State,* 297 Md. 660, 665, 467 A.2d 483, 485 (1983); *Peat, Marwick, Mitchell & Company v. Los Angeles Rams Football Company,* 284 Md. 86, 91, 394 A.2d 801, 804 (1978); *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767, 773–74 (1989). In other words, in addition to being intended as an unqualified, final disposition of the matter in controversy, *Friendship Packers,* 326 Md. at 159, 604 A.2d at 72; *Rohrbeck,* 318 Md. at 41, 566 A.2d at 773, "[t]he judgment must settle the rights of the parties, thereby concluding the cause of action." *Estep v. Georgetown Leather Design,* 320 Md. 277, 282, 577 A.2d at 80–81 (1990). *See also Stein,* 328 Md. at 9–10, 612 A.2d at 884; *Wilde v. Swanson,* 314 Md. 80, 84, 548 A.2d 837, 839 (1988); *Houghton v. County Commissioners,* 305 Md. 407, 412, 504 A.2d 1145, 1148, on reconsideration, 307 Md. 216, 513 A.2d 291 (1986); *Highfield Water Company v. Washington Sanitary District,* 295 Md. 410, 415,

456 A.2d 371, 373 (1983); *Schultz v. Pritts,* 291 Md. 1, 6, 432 A.2d 1319, 1322 (1981). Of course, the clerk must make a proper record of the judgment in accordance with Maryland Rule 2–601. *Rohrbeck,* 318 Md. at 41, 566 A.2d at 773. And, when the judgment does not adjudicate all of the claims of the parties, the court must act in accordance with Maryland Rule 2–602(b).[3] *See Waters v. U.S.F. & G.,* 328 Md. 700, 707, 616 A.2d 884, 887 (1992).

■ As we have seen, the trial court entered final judgment pursuant to Maryland Rule 2–602(b). When it did so, however, there was pending the claim against Dowling and both the appellants' motion for reconsideration, filed within three days of the court's oral ruling, and the appellees' motion to strike the motion for reconsideration. The docket reflects that the court has not yet ruled on either motion.

When it ruled orally, the court contemplated, and so advised counsel, that it would sign an order, embodying that ruling, to be submitted by the appellees' counsel. Clearly, the oral ruling was not, and could not be, a final judgment. *See Waller v. Maryland Nat'l Bank,* 332 Md. 375, 377–80, 631 A.2d 447, 448–49 (1993); Maryland Rule 2–602(a).[4] This raises the question whether unresolved motions filed in response to a

---

**3.** (b) *When allowed.* If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order entry of a final judgment:

 (1) as to one or more but fewer than all the claims or parties; or

 (2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only.

**4.** Maryland Rule 2–602(a) provides:

 (a) *Generally.*—Except as provided in section (b) of this Rule, an order or other form of decision, however, designated that adjudicates fewer than all of the claims in an action (whether raised by original claim, counter claims, cross claim, or third party claim), or adjudicates less than the entire claim or that adjudicates less rights and liabilities of fewer than all of the parties in the action:

 (1) is not a final judgment;

 (2) does not terminate the action as to any of the claims or any of the parties; and

 (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

ruling not yet final are impediments to appeal when that ruling subsequently is made final when the court signs an order embodying it and containing the certification required by Maryland Rule 2-602(b).

Both the motion for reconsideration and the answering motion to strike related to an opinion of the court not yet embodied in a judgment. While the finality of a judgment, otherwise final, is lost when a party files a motion pursuant to Maryland Rule 2-533, 2-534, or 2-535, within ten days of its entry, *Alitalia Linee Aeree Italiane v. Tornillo,* 320 Md. 192, 200, 577 A.2d 34, 38 (1990); *B & K Rental v. Universal Lift,* 319 Md. 127, 132, 571 A.2d 1213, 1215-16 (1990); *Yarema v. Exxon Corp.,* 305 Md. 219, 241 n. 19, 503 A.2d 239, 250 n. 19 (1986); *Unnamed Att'y v. Attorney Grievance Comm'n,* 303 Md. 473, 486, 494 A.2d 940, 946 (1985), no such effect obtains when a motion to reconsider is filed in connection with an opinion, or non-final order, of the trial court. This is so because no appeal lies from the opinion of a trial court which is not embodied in a judgment. *Gluckstern v. Sutton,* 319 Md. 634, 650, 574 A.2d 898, 906 *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990); *Billman v. Maryland Deposit Ins. Fund,* 312 Md. 128, 132, 538 A.2d 1172, 1174 (1988); *Doehring v. Wagner,* 311 Md. 272, 274, 533 A.2d 1300, 1301 (1987); *Administrator, Motor Vehicles Administration v. Vogt,* 267 Md. 660, 665, 299 A.2d 1, 3-4 (1973); *Alberstadt v. Alberstadt,* 257 Md. 552, 553, 263 A.2d 535, 535-36 (1970); *Hudson Building Supply Company v. Stulman,* 258 Md. 304, 307, 265 A.2d 925, 926 (1970). When the court entered final judgment, taking the action challenged by one side, but urged by the other, it rendered moot both the motion to reconsider and the motion to strike. Therefore, neither did, or could, affect the finality of that judgment.

### III.

Maryland Code (1957, 1990 Cum.Supp.) Article 48A, § 541(c)(2), in effect at the time of the accident, in pertinent

part, provided:[5]

> In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amount required under Title 17 of the Transportation Article, for damages which the insured is

---

**5.** Section 541 has been amended on several occasions since 1981. After the most recent substantive amendment, *see* Ch. 641, Acts of 1992, subsection (c)(2) provides:

> (2) In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage in at least the amounts required under Title 17 of the Transportation Article, for damages, subject to the policy limits, which:
>
> > (i) The insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle; and
> >
> > (ii) The surviving relatives, as defined in § 3–904 of the Courts Article, of the insured are entitled to recover from the owner or operator of an uninsured motor vehicle because of the death of the insured as the result of an accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle.
> >
> > (iii) The coverage required under this subsection (c) shall be in such form and subject to such conditions as may be approved by the Commissioner of Insurance.
> >
> > (iv) Any provision in any policy of motor vehicle liability insurance issued after July 1, 1975, with respect to the coverage provided for damages sustained by the insured as a result of the operation of an uninsured motor vehicle, which commands or requires the submission of any dispute between the insured and the insurer to binding arbitration, is prohibited and shall be of no legal force or effect.
> >
> > (v) In no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A, §§ 243H & 243–I. However, *the insurer may exclude from coverage benefits for:*
> >
> > > \* \* \* \* \* \*
> >
> > (vi) The coverage required under this subsection shall be primary *to any right to recovery from the Maryland Automobile Insurance Fund pursuant to § 243H of this article.*

The amendment also added new subsections (g) and (h). Subsection (g) pertains to the waiver of uninsured motorist coverage under a policy of "private passenger motor vehicle insurance" "by the first named insured under this subsection." Subsection (h) provides: "[t]he amount of uninsured motorist coverage under a motor vehicle insurance policy may not exceed the amount of the liability coverage under the same policy."

entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle. *There shall be offered in writing to the insured the opportunity to contract for higher amounts than those provided under Title 17 of the Transportation Article if these amounts do not exceed the amounts of the motor vehicle liability coverage provided by the policy....* (Emphasis added).

Section 541 was added to the Insurance Code in 1972. *See* Ch. 73, Acts of 1972. Subsection (c) did not, at that time, however, contain a provision comparable to that emphasized above. It was amended by Ch. 510, Acts of 1981. In addition to breaking the subsection down into paragraphs, that amendment added a provision to subsection (c)(2) requiring insurers to make "available to the insured the opportunity to contract for higher amounts than those provided under Title 17 of the Transportation Article if these amounts do not exceed the amount of the motor vehicle liability coverage provided by the policy." That language remained unchanged until 1989, when the word "available" was replaced with "offered in writing." *See* Ch. 542, Acts of 1989.

Subsection (f) was added to section 541 in 1983, along with subsection (e). *See* Ch. 656, Acts of 1983. Unchanged since its enactment, it provides:

(f) *Uninsured motorist coverage in policies providing coverage in excess of other insurance.*—Policies of insurance that have as their primary purpose to provide coverage in excess of other valid and collectible insurance or qualified self insurance may include uninsured motorist coverage as provided in subsection (c) of this section.

The trial court found both that a personal liability insurance policy providing motor vehicle liability coverage is a motor vehicle liability policy and that, by enacting section 541(f), the Legislature either intended that such policies not be motor vehicle liability policies or that they be excluded or exempted from the requirements of section 541(c)(2). Neither the appel-

lants nor the appellees was completely satisfied with that ruling. Relying on *Cohen v. American Home Assurance Co.*, 367 So.2d 677 (Fla.App.1979) and *Southern American Insurance Co. v. Dobson*, 441 So.2d 1185 (La.1983), the appellants are in total agreement with the trial court's ruling that umbrella or excess policies providing motor vehicle liability coverage fall within the definition of motor vehicle liability policy. The appellants adamantly disagree, however, that the Legislature intended to exempt such policies from the requirements of subsection (c)(2). Among the reasons they proffer for that disagreement is that, had the Legislature wanted to exempt umbrella or excess policies, it could, and would, have done so more directly.

Appellees agree with the trial court that, in enacting section 541(f), the Legislature intended to exclude umbrella or excess policies from the reach of subsection (c)(2). They do not accept, however, that an excess or umbrella policy is a motor vehicle liability insurance policy. When the nature and purpose of each is considered, they argue, there is a clear distinction between an umbrella or excess insurance policy and a motor vehicle liability insurance policy:

> A motor vehicle liability insurance policy is specific in providing protection or certain coverages to identified or defined insureds using the described vehicle, or in some instances, a non-owned vehicle and, as such, only insures against the risks of loss arising from the use and maintenance of the specific motor vehicle.... On the other hand, an umbrella or excess policy is procured by an insured to provide insurance coverage in excess of other "underlying" insurance policies.... It is not tied to a specific automobile (and may not provide any automobile related coverage), but is designed to protect the insured against catastrophic losses.... An umbrella policy "assumes a risk of much less frequent occurrence, *i.e.*, the risk of judgments in excess of primary policy limits, and accordingly carries premiums which reflect the lesser magnitude of this risk...."

Appellees' Brief at 4–5 (citations omitted). The appellees support their position with cases applying the Delaware and

Alabama statutes. *See, e.g., O'Hanlon v. Hartford Accident & Indemnity Company,* 639 F.2d 1019 (3rd Cir.1981); *Trinity Universal Insurance Company v. Metzger,* 360 So.2d 960 (Ala.1978).

■ Determining the correctness of the trial court's findings presents questions of statutory construction. We recently reviewed some of the principles of statutory construction in *G.E.I.C.O. v. Insurance Commissioner,* 332 Md. 124, 630 A.2d 713 (1993). Noting that the primary goal of statutory construction is discerning the legislative intent, we stated:

> We begin our search for legislative intent with the words of the statute to be interpreted, *Harris v. State,* 331 Md. 137, 145–46, 626 A.2d 946, 950 (1993); *State v. Crescent Cities Jaycees Foundation, Inc.,* 330 Md. 460, 468, 624 A.2d 955, 959 (1993); *State v. 149 Slot Machines,* 310 Md. 356, 361, 529 A.2d 817, 819 (1987); *Kaczorowski v. Mayor & City Council of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 632 (1987), considered in light of the context in which the statute appears. *Mars v. Prince George's County,* 319 Md. 597, 604, 573 A.2d 1346, 1349 (1990); *149 Slot Machines,* 310 Md. at 361, 529 A.2d at 819; *Kaczorowski,* 309 Md. at 515, 525 A.2d at 632; *Baltimore Gas & Electric Company v. Public Service Commission,* 305 Md. 145, 137, 501 A.2d 1307, 1313 (1986). Context may include related statutes, pertinent legislative history and "other material that fairly bears on the ... fundamental issue of legislative purpose or goal...." *Kaczorowski,* 309 Md. at 515, 525 A.2d at 632–33.

*Id.* at 131, 630 A.2d at 717. *See also State v. Thompson,* 332 Md. 1, 6–7, 629 A.2d 731, 734 (1993). Statutes which are a part of a statutory scheme are to be construed together and in light of the statutory scheme, *State v. Crescent City Jaycees Foundation, Inc.,* 330 Md. 460, 468, 624 A.2d 955, 959 (1993); *State v. Bricker,* 321 Md. 86, 93, 581 A.2d 9, 12 (1990), and harmonized to the extent possible. Neither should be read, however, "so as to render the other or any portion of it,

meaningless, surplusage, superfluous, or nugatory." *G.E.I.C.O. v. Insurance Commissioner,* 332 Md. at 132, 630 A.2d at 717. *See Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992).

The appellants note that, by its literal terms, § 541(c)(2) applies to "every policy of motor vehicle liability insurance." It does not distinguish between those policies that provide primary coverage and those that provide excess coverage. They submit that a personal liability umbrella or excess policy which provides motor vehicle liability coverage is as much a motor vehicle liability insurance policy as is a primary policy providing such coverage. Consequently, say appellants, such a policy is within the plain language of subsection (c)(2). This is the rationale utilized by the Supreme Court of Louisiana in *Dobson,* 441 So.2d at 1190. *See also Cohen,* 367 So.2d at 681–82; *St. Paul Fire and Marine Insurance Company, Inc. v. Goza,* 137 Ga.App. 581, 224 S.E.2d 429, 431 (1976). *But see* 8C Appleman, *Insurance Law & Practice,* § 5071.65, at 107 (1981).

The *Dobson* court alternatively held that the policy or purpose underlying Louisiana's uninsured motorist statute mandated the same result. 441 So.2d at 1191. The court noted the evolution of the statute from one "allowing only limited recovery to the innocent victim to [one] permitting the insured to choose the maximum limits of his uninsured motorist coverage." *Id.* This rationale, too, applies equally to section 541. Like the Louisiana statute, although subsection (a) requires that every policy of motor vehicle liability insurance contain the minimum required liability coverage, subsection (b) permits an insurer to issue liability coverage in excess of that amount. Section 541(c)(2) then not only requires uninsured motorist coverage "in at least the amounts required under Title 17 of the Transportation Article," but it also provides a mechanism whereby an insured may contract for additional uninsured motorist coverage up to the amount of liability coverage provided by the policy. Moreover, it does

so, as we have seen, without differentiating between primary and umbrella policies.

The cases upon which the appellees rely reason that the uninsured motorist provision applies only to the basic policy, the umbrella policy being for the purpose of covering only catastrophic occurrences. *See, e.g., Metzger,* 360 So.2d at 961–62; *O'Hanlon,* 639 F.2d at 1027 (excess umbrella coverage is merely supplementary to the underlying policy, which must provide the insured with the benefits required under the uninsured motorist statute).

Not all "valid and collectible insurance or qualified self-insurance" is automobile liability insurance. Consequently, not every policy of insurance whose primary purpose is to provide coverage in excess of such insurance need include uninsured motorist coverage as provided in section 541(c)(2). It is only when it is to complement automobile liability insurance coverage that excess coverage in that regard would be required. Thus, the appellants argue, that the purpose of section 541(f) could be to make sure that where automobile liability coverage is offered on an excess basis, the insured has the same opportunity to effect uninsured motorist coverage, and to the same extent, as in the case of a primary automobile liability policy. In other words, subsection (f) may be interpreted simply as making clear that where motor vehicle liability insurance is offered on an excess basis, the provisions of section 541(c), including subsection (c)(2), would apply.

The appellees point out that subsection (f) uses the term "may," rather than "shall." They reason that, because the provision is permissive, not mandatory, insofar as uninsured motorist coverage is concerned, the decision to provide such coverage is at the option of the insurer. Moreover, if subsection (c)(2) encompasses an excess policy providing automobile liability coverage, then appellees suggest that interpreting subsection (f) as proposed by the appellants would be redundant and that the legislative intent in enacting subsection (f) would have been to exclude umbrella or excess liability policies providing motor vehicle liability coverage from the require-

ments of § 541(c)(2).[6]

Along with subsection (f), Ch. 656 enacted subsection (e), which exempted from the coverage required by subsection (c)

a policy of liability insurance that insures a motor vehicle that is not subject to registration under § 13–402 of the Transportation Article, because it is not driven on a highway or it is exempt under § 13–402(c)(10) of the Transportation Article.

Enactment of that subsection seems to have been the *raison d'etre* of the bill, as reflected by the Bill Analysis of House Bill 1294, prepared by the Department of Legislative Reference for the Senate Economic Affairs Committee:

*CAPSULE SUMMARY:*

This bill exempts from Maryland's mandatory uninsured motorist coverage those vehicles not subject to registration because they are not driven on highways or are exempt under § 13.402(c)(10).

*SUMMARY OF CHANGES:*

A new subsection exempts from mandatory uninsured motorist coverage vehicle not subject to registration because they are not driven on highways or are exempt under § 13.402(c)(10);

the Report of the Senate Economic Affairs Committee:

*LEGISLATIVE INTENT:*

The intent and purpose of this bill is to exempt from this State's mandatory uninsured motorist coverage vehicles

---

**6.** One of the appellees' arguments is that the title of Ch. 656, Acts of 1983 refers to "exemptions." The exemptions referenced, however, are "certain motor vehicles, including snowmobiles, from mandated uninsured motorist coverage," not certain insurance policies. The short title and purpose of the bill are:

An Act Concerning
 Uninsured Motorist Coverage—Exemptions
For the purpose of exempting certain motor vehicles, including snowmobiles, from mandated uninsured motorist coverage; and generally relating to exempting certain motor vehicles from mandated uninsured motorist coverage.

which are not subject to registration because they are not driven on the highway and to exempt snowmobiles;

and a letter, dated February 24, 1983, from the Deputy Executive Director of MAIF to John Lang, III, the Supervisory Analyst in the Department of Fiscal Services. According to a memo, dated January 13, 1983, from David L. Hill, Senior Attorney, subsection (f) was "thrown in ... to take care of 'umbrella' policies for Jim's benefit." [7] Nothing in the file sheds any light on what "to take care of 'umbrella' policies" was intended to mean. The only other document in the files reflecting on subsection (f)'s purpose is a draft of the bill which shows the deletion of the phrase, "but need not."

■ To decide appellants' contentions concerning a statutorily imposed duty on an insurer of excess automobile liability, it is only necessary that we interpret subsection (f). The meaning and scope of subsection (c)(2) may be left for another day. We hold that subsection (f) permits, but does not require, the excess insurer to offer uninsured motorist coverage. It appears that the problem faced by the person drafting subsection (f) was the breadth of subsection (c)(2). The latter could be interpreted to apply to excess insurance over underlying automobile liability. But, without regard to the correct interpretation of subsection (c)(2), subsection (f) frees excess automobile liability coverage from the rules of subsection (c)(2) and makes uninsured motorist excess coverage optional with the insurer.

Thus, by the operation of subsection (f), the automobile liability excess insurer may or may not make available uninsured motorist coverage as part of its excess policies. If that coverage is made available, the excess insurer may, but is not obliged by virtue of (c)(2) to, offer that coverage in writing. If uninsured motorist coverage is made available by an excess insurer as part of an excess policy, that coverage may, but

---

7. The file does not reveal who "Jim" is. The memo was written to Dan England and Jim Tuite, with no identification as to who they are or with whom they were affiliated.

need not, be made available up to the limits of the third party liability coverage of the excess policy.

It follows that there was no statutory duty on the appellees to offer in writing to Popham $1,000,000 of uninsured motorist coverage with the excess policy.

## IV.

 It is well settled in Maryland that, "like conventional agents, an insurance agent must exercise reasonable care and skill in performing his duties. And if such a representative fails to do so, he may become liable to those, including his principal, who are caused a loss by his failure to use standard care." *Bogley v. Middleton Tavern,* 288 Md. 645, 650, 421 A.2d 571, 573 (1980). *See Canatella v. Davis,* 264 Md. 190, 206, 286 A.2d 122, 130 (1972); *Lowitt v. Pearsall Chemical,* 242 Md. 245, 253, 256, 219 A.2d 67, 72–74 (1966); *Hampden Roads v. Boston Insurance Company,* 150 F.Supp. 338, 343 (D.Md.1957); 3 Couch on Insurance Second, § 25:37, at 335 (1960). Thus, "[w]hen an agent possessing authority to bind an insurer as the principal with respect to designated types of insurance, negligently, but without violating express instructions of his principal, binds that principal in a manner different from that expressed in the issued policy," *Bogley,* 288 Md. at 651, 421 A.2d at 574, the agent is liable to his or her principal for such damage as his or her actions may have caused. The principal may sue the agent, either in contract or for negligence in the performance of the duty imposed by the contract. Couch, § 25:46, at 356–62; 16 Appleman, Insurance Law and Procedure, §§ 8831 & 8841 (1968). Moreover, unless there is evidence suggesting bad faith, disloyalty or dishonesty on the part of the agent toward the insured, an insured is entitled to place trust and confidence in the insurance agent. *Dimeo v. Burns, Brooks & McNeal, Inc.,* 6 Conn.App. 241, 504 A.2d 557, 559 (1986).

In order to recover in a negligence action against the appellees, the appellants must prove that the appellees owed them a duty of care, that the duty was breached, and that the

breach was the proximate cause of the appellants' injury. The duty the appellants allege the appellees breached in this case is similar to the one they argued was prescribed by section 541(c)(2), namely, to offer an insured an opportunity to obtain additional uninsured motorist coverage in the same amount as the liability coverage provided.[8]

The appellees argue that the duty imposed by section 541(c)(2) is statutory, rather than common law. Noting that the court in *Libby v. G.E.I.C.O.*, 79 Md.App. 717, 725, 558 A.2d 1236, 1240 (1989), when addressing the issue of an insurer's duty under that section, makes no mention of a common law duty, they submit that the trial court properly dismissed count two of the complaint. The appellants, on the other hand, perceive a different kind of duty. They assert that section 541(c)(2) does not create the duty. Rather, the obligation to use reasonable care and skill is what the common law duty requires, and section 541(c)(2) merely provides a standard against which to judge whether the agent and the insurer exercised the requisite degree of skill and care. *See Gross v. Sussex, Inc.*, 332 Md. 247, 259, 630 A.2d 1156, 1163 (1993). Thus, the argument proceeds, it was not the agent's failure to notify Popham, in writing, that he could acquire additional uninsured motorist coverage up to the limit of the liability coverage in the policy, that constituted the breach of duty,

---

8. In their brief, the appellants pointedly do not argue that the opportunity afforded must be in writing. In fact, they argue that, in this case, the appellees' failure to exercise due care and skill consisted of "failing to tell that insured that he had a legal right to buy $1,000,000 of uninsured motorist coverage to protect his own family." Appellant's Brief at 21. In the appellants' complaint, however, it is alleged:

11. The Defendant, State Farm Mutual Insurance Company, and the Defendant Agent, Walter Menage, have common law and statutory duties to advise the Plaintiff, Douglas Popham, in writing and in a reasonably commercial manner, that he had a right to purchase an Uninsured Motorist Liability policy which coverage amounts to the limit of One Million Dollars ($1,000,000.00).

　　*　　*　　*　　*　　*　　*

13. The Defendants, State Farm Mutual Insurance Co., and Walter Menage, failed to advise the Plaintiff, Douglas G. Popham as required by the *Annotated Code of Maryland* and as required by the exercise of their legal duty of reasonable care to the Plaintiffs.

rather it was his failure fully and properly to advise Popham concerning uninsured motorist coverage, including its relationship to liability coverage and of the consequences of having an insufficient amount of such coverage or to recommend, attempt to procure, and offer to the insured, an appropriate amount of uninsured motorist coverage.

Although it is not a model of clarity, the complaint in effect alleges (1) that Popham purchased an excess or umbrella liability insurance policy from State Farm through its agent Menage, (2) that State Farm and Menage owed Popham a duty to exercise reasonable skill and care in seeing to his insurance needs, which included seeing that Popham obtained an appropriate amount of uninsured motorist coverage, (3) that the appellees breached this duty when "they failed to advise the Plaintiff ... as required by the *Annotated Code of Maryland* and as required by the exercise of their legal duty of reasonable care ...," and (4) that the appellants were damaged by their breach of duty.

■ We have already held that, by enacting section 541(f), the Legislature intended that the decision to provide uninsured motorist coverage in an excess or umbrella policy be optional with the insurer. This, as we noted previously, disposes of Popham's contention that the appellees breached a duty "required by the *Annotated Code of Maryland.*" It remains to be determined whether they breached a duty "required by the exercise of their legal duty of reasonable care." That determination depends upon the existence of evidence that State Farm opted to offer uninsured motorist coverage in an excess or umbrella policy. Popham provided evidence to that effect in his Motion for Reconsideration. That evidence consisted of a bulletin issued by State Farm, enclosing forms and a form letter.[9]

---

9. The State Farm form letter advised the insured that "[t]he law of your state requires that this coverage be offered and an acceptance or rejection be made by every policyholder." That State Farm may have interpreted the statute erroneously does not change the fact that it did, in fact, offer excess uninsured motorist coverage.

In this case, Menage procured an excess or umbrella policy providing motor vehicle liability insurance presumably in the amount Popham requested. He did not, however, Popham alleges, offer Popham, orally or otherwise, an opportunity to contract for the same amount of uninsured motorist coverage. Because it appears that State Farm offered excess uninsured motorist coverage, to the extent that allegation encompasses Menage's failure to advise Popham concerning uninsured motorist coverage, including telling him that he could obtain an equal amount of uninsured motorist coverage as liability coverage, a trier of fact could conclude that Menage failed to exercise the requisite skill and care of an insurance agent in that regard. And, since Menage is a captive agent for State Farm, *see* Art. 48A, § 166; *American Casualty Company of Reading, Pa. v. Ricas*, 179 Md. 627, 631, 22 A.2d 484, 487 (1941) (distinguishing insurance broker or solicitor from insurance agent); [10] *see also* Art. 48A, § 166,[11] he could bind State

---

10. The Court explained:
 Authorities everywhere agree that an insurance agent, so far as the insurer is concerned, is a person expressly or implicitly authorized to represent it in dealing with third parties in matters relating to insurance, and an insurance solicitor, or broker, is one who acts as a middleman between the assured and the insurer, and who solicits insurance from the public under no employment from any special company, but having secured an order, either places the insurance with a company selected by the assured, or in the absence of any selection by him, then with a company selected by the broker. Ordinarily, the relation between the insured and the broker is that between principal and agent. An insurance broker is ordinarily employed by a person seeking insurance, and when so employed, is to be distinguished from ordinary insurance agent, who is employed by insurance companies to solicit and write insurance by, and in the company.
 *Ricas*, 179 Md. at 631, 22 A.2d at 487.

11. Article 48A, § 166 provides, in pertinent part:
 (a) An "agent" is a person who for compensation in any manner solicits, procures, or negotiates insurance contracts, including contracts for nonprofit health service plans, dental plan organizations, and health maintenance organizations, or the renewal or continuance of any of these contracts on the behalf of organizations issuing the contracts.
 * * * * * *
 (b) An "independent agent" means an agent as defined in subsection (a) of this section and:

Farm, and, so, his negligence is attributed to State Farm. *Hankins v. Public Service Mutual Insurance Company*, 192 Md. 68, 81, 63 A.2d 606, 612 (1949); *Ricas*, 179 Md. at 632–33, 22 A.2d at 487–88; *Medical Mutual Liability Insurance v. Mutual Fire*, 37 Md.App. 706, 714–15, 379 A.2d 739, 743–44 (1977). *See also Metromedia v. W.C.B.M. Md.*, 327 Md. 514, 520–21, 610 A.2d 791, 795 (1992). Moreover, " 'the general rule is that the corporate officers *or agents* are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.' " *Metromedia*, 327 Md. at 520, 610 A.2d at 794 (emphasis added), quoting *Tedrow v. Deskin*, 265 Md. 546, 550–51, 290 A.2d 799, 802–03 (1972). Consequently, the complaint sets forth a cause of action in negligence against both Menage and State Farm.[12]

*JUDGMENT DISMISSING THE DECLARATORY JUDGMENT ACTION AFFIRMED; JUDGMENT DIS-MISSING THE NEGLIGENCE ACTION REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR*

---

(1) Who is not owned or controlled by any insurer or group of insurers;

(2) Whose appointment does not prohibit the representation of more than one insurer or group of insurers; and

(3) Whose appointment provides that at termination the agent's records shall remain the property of the agent, and that the agent retains the use and control of all expirations incurred during the agency.

A person or corporation other than an independent insurance agent may not be represented to the public as an independent agent.

* * * * * *

(c) A "broker" is a person who for compensation in any manner solicits, procures or negotiates insurance contracts or the renewal or continuance thereof, on behalf of insureds or prospective insureds other than himself and not on behalf of an insurer or agent.

12. The appellees' argument that there could be no cause of action against Menage because Menage is State Farm's captive agent fails to take account of *Bogley v. Middleton Tavern*, 288 Md. 645, 650, 421 A.2d 571, 573 (1980) and *Lowitt v. Pearsall Chemical Corp.*, 242 Md. 245, 253–56, 219 A.2d 67, 72–74 (1966). It also fails to take account of the fact that it is Menage, himself, who committed the act, notwithstanding that it was committed on behalf of State Farm. *See Metromedia*, 327 Md. at 520, 610 A.2d at 795.

*MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE–HALF BY THE APPELLANTS AND ONE–HALF BY THE APPELLEES.*